ACCEPTED
03-16-00214-CV
10956428
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/3/2016 9:53:23 AM
JEFFREY D. KYLE
CLERK

No. 03-16-00214-CV

IN THE
COURT OF APPEALS
FOR THE
THIRD DISTRICT OF TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/3/2016 9:53:23 AM
JEFFREY D. KYLE
Clerk

CHISHOLM TRAIL SUD STAKEHOLDERS GROUP,

Appellant,

V.

CHISHOLM TRAIL SPECIAL UTILITY DISTRICT, AND DISTRICT DIRECTORS DELTON ROBINSON, ED PASTOR, MIKE SWEENEY, JAMES PLETCHER, ROBERT KOSTKA, DAVID MASERANG, GARY GOODMAN, AND ROBERT JOHNSON, JR.; THE PUBLIC UTILITY COMMISSION OF TEXAS; ET AL.,

Appellees.

From the 419th Judicial District Court of
Travis County, Texas

**APPELLANT'S BRIEF**

**ORAL ARGUMENT REQUESTED**

James P. Allison
SBN: 01090000
j.allison@allison-bass.com
ALLISON, BASS & MAGEE, LLP
A.O. Watson House
402 W. 12th Street
Austin, Texas 78701
(512) 482-0701 telephone
(512) 480-0902 facsimile

# IDENTITY OF PARTIES & COUNSEL

Appellants certify that the following is a complete list of the parties, the attorneys, and any other person who has any interest in the outcome of this lawsuit:

**Appellant:**

Chisholm Trail SUD Stakeholders Group.

**Counsel for Appellants:**

James P. Allison
SBN: 01090000
j.allison@allison-bass.com
J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com
Phillip Ledbetter
SBN: 24041316
p.ledbetter@allison-bass.com
ALLISON, BASS & MAGEE, LLP
A.O. Watson House
402 W. 12th Street
Austin, Texas 78701
(512) 482-0701 telephone
(512) 480-0902 facsimile

**Appellees:**

Chisholm Trail Special Utility District ("CTSUD")

CTSUD Directors:
    Delton Robinson,
    C.E. ("Ed") Pastor,
    Mike Sweeney,
    Robert Kotska,
    James Pletcher,

David Maserang,
Pat Gower,
Gary Goodman, and
Robert Johnson, Jr.,
In their official capacities

The Public Utility Commission of Texas ("PUC")

PUC Commissioners:
Donna L. Nelson,
Kenneth W. Anderson, Jr., and
Bandy Marty Marquez
In their official capacities.

The City of Georgetown, Texas


**Counsel for Appellees:**

Jose E. De La Fuente
SBN: 00793605
jdelafuente@lglawfirm.com
Lambeth Townsend
SBN: 20167500
ltownsend@lglawfirm.com
Ashley D. Thomas
SBN: 24090430
athomas@lglawfirm.com
Lloyd Gosselink, Rochelle & Townsend, P.C.
816 Congress Avenue, Suite 1900
Austin, Texas 78701
Telephone: (512) 322-5800
Facsimile: (512) 472-0532
*Lead Attorneys for Appellees the City of Georgetown, Chisholm Trail Special Utility District and the District Directors.*

Daniel C. Wiseman
SBN: 2402178
Daniel.wiseman@texasattorneygeneral.gov
Office of the Texas Attorney General
Environmental Protection Division (MC-066)
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 463-2012
Facsimile: (512) 320-0911
*Lead Attorney for Appellees the Public Utility Commission of Texas, Commissioner Donna L. Nelson, Commissioners Kenneth W. Anderson, Jr., and Commissioners Brandy Marty Marquez.*


Breck Harrison
SBN: 24007325
bharrison@jw.com
Leonard Dougal
SBN: 06031400
ldougal@jw.com
Jackson Walker, L.L.P.
100 Congress Avenue, Suite 1100
Austin, Texas 78701
Telephone: (512) 236-2000
Facsimile: (512) 236-2002
*Attorneys for Appellees Chisholm Trail Special Utility District and District Directors Delton Robinson, Ed Pastor, Mike Sweeney, James Pletcher, Robert Kostka, David Maserang, Gary Goodman, and Robert Johnson, Jr.*


Art Rodriguez
Russell & Rodriguez, L.L.P.
1633 Williams Drive, Building 2, Suite 200
Georgetown, Texas 78628-3659
(512) 930-1317
(866) 929-1641 (Fax)
arodriguez@txadminlaw.com
*Attorney for Appellee the City of Georgetown*

Kerry E. Russell
Russell & Rodriguez, L.L.P.
1633 Williams Drive, Building 2, Suite 200
Georgetown, Texas 78628
(512) 930-1317
(866) 929-1641 (Fax)
krussell@txadminlaw.com


Sam Chang
Staff Attorney
Public Utility Commission of Texas
Legal Division
1701 N. Congress Ave.
Austin, Texas 78711-3326
(512) 936-7261
(512) 936-7268 (fax)
sam.chang@puc.texas.gov
*Attorney for the Public Utility Commission of Texas Staff*

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL ..................................................................2

TABLE OF CONTENTS ....................................................................................6

INDEX OF AUTHORITIES ................................................................................7

APPELLANT'S BRIEF .....................................................................................13

STATEMENT OF THE CASE ...........................................................................13

STATEMENT OF JURISDICTION ....................................................................15

STATEMENT ON ORAL ARGUMENT .............................................................15

ISSUE PRESENTED .......................................................................................15

STATEMENT OF FACTS .................................................................................16

SUMMARY OF AGRUMENT ...........................................................................33

ARGUMENT ..................................................................................................35

CONCLUSION ...............................................................................................81

PRAYER ........................................................................................................81

CERTIFICATION OF COMPLIANCE ..............................................................83

CERTIFICATE OF SERVICE ..........................................................................83

APPENDIX TO APPELLANT'S BRIEF .............................................................85

# INDEX OF AUTHORITIES

**Cases**

*Austin Nursing Ctr., Inc. v. Lovato,*
    171 S.W.3d 845 (Tex.2005)................................................................ 78

*Bexar Metro. Water Dist. v. Texas Com'n on Envtl. Quality,* 185ch S.W.3d 546
    (Tex. App.—Austin 2006, pet. denied) ........................................62, 63

*Bohannon v. Texas Bd. of Criminal Justice,*
    942 S.W.2d 113 (Tex.App.-Austin 1997, writ denied) ...................... 40

*Byrd v. City of Dallas,*
    6 S.W.2d 7380 (Comm'n App. 1928) ................................................ 42

*Cash Am. Int'l Inc. v. Bennett,*
    35 S.W.3d 12 (Tex.2000)................................................................... 73

*Central Power & Light Co. v. Public Util. Comm'n,*
    17 S.W.3d 780 (Tex. App.-Austin 2000, pet. denied)....................... 72

*City of Austin v. McCall,* 68 S.W. 791 (1902)...................................... 80

*City of Beaumont v. Bouillion,*
    896 S.W.2d 143 (Tex.1995)............................................................... 40

*City of El Paso v. Heinrich,*
    284 S.W.3d 366 (Tex. 2009)........................................... 37, 51, 53, 54

*City of Elsa v. M.A.L.,*
    226 S.W.3d 390 (Tex. 2007)............................................................. 51

*City of Ingleside v. City of Corpus Christi,*
    469 S.W.3d 589 (Tex.2015)......................................................... 36, 70

*City of Lubbock v. Phillips Petroleum Co.,*
    41 S.W.3d 149 (Tex. App.-Amarillo 2000, no pet.)........................... 69

*City of The Colony v. N. Texas Mun. Water Dist.,*
    272 S.W.3d 699 (Tex. App. – Fort Worth, 2008, no pet.)................... 62

*City of Waco v. Kirwan,*
    298 S.W.3d 618 (Tex.2009)............................................................... 35

*Cobb v. Harrington,*
    190 S.W.2d 709 (Tex. 1945).............................................................. 53

*Continental Coffee Prods. Co. v. Cazarez,*
    937 S.W.2d 444 (Tex.1996)........................................................ 73, 78

*Crofts v. Court of Civil Appeals,*
    362 S.W.2d 101 (Tex.1962)............................................................... 73

*Dallas Area Rapid Transit v. Whitley,*
    104 S.W.3d 540 (Tex. 2003)............................................................. 43

*Davis v. City of Lubbock*,
326 S.W.2d 6990 (Tex. 1959)......................................................................42

*De Leon v. City of El Paso*,
353 S.W.3d 285 (Tex.App.-El Paso 2011, no pet.) .....................................40

*De Los Santos v. City of Robstown*,
No. 13–11–00278–CV, 2012 WL 67067808 (Tex. App.-Corpus Christi Dec. 13, 2012, no pet.) .............................................................................................51

*Edgewood Indep. Sch. Dist. v. Meno*,
917 S.W.2d 717 (Tex.1995)........................................................................68

*Ehlinger v. Rankin*,
9 Tex. Civ. App. 424, 29 S.W. 240 (1895)..................................................41

*Fed. Sign v. Tex. S. Univ.*,
951 S.W.2d 401 (Tex.1997)...................................................................53, 54

*Frasier v. Yanes*,
9 S.W.3d 422 (Tex. App.-Austin 1999, no pet.).....................................39, 41

*Garcia v. Corpus Christi Civil Serv. Bd.*,
No. 13-07-00585-CV, 2009 WL 2058892 (Tex. App.-Corpus Christi July 16, 2009, no pet.) .............................................................................................40

*Gatesco Q.M., Ltd. v. City of Houston*,
333 S.W.3d 3388 (Tex. App.-Houston [14th Dist.] 2010, no pet.) .............51

*Harris Cnty. Flood Control Dist. v. Mann*,
140 S.W.2d 1098 (Tex. 1940)....................................................................37

*Hays County v. Hays County Water Planning P'ship*,
106 S.W.3d 3497 (Tex.App.-Austin 2003, no pet.)....................................79

*Hendee v. Dewhurst*,
228 S.W.3d 354 (Tex. App.-Austin 2007, pet. denied)..............................39

*Hindman v. Harding*,
No. 03-04-00479-CV, 2005 WL 1038828 (Tex. App.-Austin May 5, 2005, no pet.) ...........................................................................................................70

*Houston Belt & Terminal Ry. Co. v. City of Houston*,
No. 14-0459, 2016 WL 1312910 (Tex. Apr. 1, 2016)............................53, 54

*In re Smith*,
333 S.W.3d 5825 (Tex.2011)......................................................................54

*Jones v. Ross*,
173 S.W.2d 1022 (Tex. 1943).....................................................................39

*Key v. Comm'rs Court of Marion Cnty.*,
727 S.W.2d 667 (Tex. App.–Texarkana 1987, no writ) ...........................38, 42

*Lewis v. Davis*,
  199 S.W.2d 146 (Tex. 1947)...................................................................... 38, 67

*Lone Star Coll. Sys. v. Immigration Reform Coal. of Texas (IRCOT)*,
  418 S.W.3d 263 (Tex. App.–Houston [14th Dist.] 2013, pet. denied)................ 51

*MAG-T, L.P. v. Travis Cent. Appraisal Dist.*,
  161 S.W.3d 617 (Tex. App.-Austin 2005, pet. denied)..................................... 74

*Magnolia Bend Volunteer Fire Dep't, Inc. v. McDonnell*, No.
  09-03-051CV, 2003 WL 22922799 (Tex. App.-Beaumont Dec. 11, 2003, no
  pet.) ........................................................................................................... 39

*Martin v. Martin, Martin & Richards, Inc.*,
  12 S.W.3d 120 (Tex. App.-Fort Worth 1999, no pet.) ..................................... 70

*Miller v. S. E. Texas Reg'l Planning Comm'n*, No. 03-11-00817-CV,
  2013 WL 3724716 (Tex. App.-Austin July 11, 2013, no pet.)........................... 43

*Mitchell Cty. v. City Nat. Bank*
  43 S.W. 8801 (Tex. 1898)................................................................................ 41

*Morales v. Hidalgo Cty. Irrigation Dist. No. 6*,
  No. 13-14-00205-CV, 2015 WL 5655802 (Tex. App.-Corpus Christi Sept. 24,
  2015, pet. denied)..................................................................................... 38, 42

*Motorola v. Tarrant County Appraisal Dist.*,
  980 S.W.2d 899 (Tex.App.–Fort Worth 1998, no pet.)..................................... 41

*Niagara Fire Ins. Co. v. Numismatic Co. of Fort Worth*,
  380 S.W.2d 830 (Tex. Civ. App.-Fort Worth 1964, writ ref'd n.r.e)................. 80

*Nueces Cty. v. Ferguson*,
  97 S.W.3d 205 (Tex. App.-Corpus Christi 2002, no pet.)................................. 40

*Philadelphia Indem. Ins. Co. v. White*,
  No. 14-0086, 2016 WL 2848487 (Tex. May 13, 2016)..................................... 38

*Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.*,
  265 S.W.3d 496 (Tex.App.-Dallas 2008, no pet.) ........................................... 39

*Ritchey v. Vasquez*,
  986 S.W.2d 611 (Tex.1999)............................................................................. 73

*Roberts Express, Inc. v. Expert Transp., Inc.*,
  842 S.W.2d 766 (Tex. App.-Dallas 1992, no writ) ..................................... 72, 73

*San Antonio Indep. Sch. Dist. v. Board of Trs. of San Antonio Elec. & Gas Sys.*,
  204 S.W.2d 22 (Tex. Civ. App.–El Paso 1947, writ ref'd n.r.e.)....................... 37

*Save Our Springs Alliance, Inc. v. City of Dripping Springs*,
  304 S.W.3d 871 (Tex. App.–Austin 2010, pet. denied) .................................... 79

*Sneed v. Webre*,
  465 S.W.3d 169 (Tex. 2015)............................................................................ 78

*Spring Branch Mgmt. Dist. v. Valco Instruments Co., L.P.*,
   No. 01-11-00164-CV, 2012 WL 2923151 (Tex. App.-Houston [1st Dist.] July
   12, 2012, no pet.) ..................................................................................................... 40
*Steele v. City of Houston,*
   603 S.W.2d 786 (Tex.1980) ..................................................................................... 40
*Strayhorn v. Lexington Ins. Co.*,
   128 S.W.3d 772 (Tex. App.-Austin 2004) .............................................................. 74
*Subaru of Am., Inc. v. David McDavid Nissan, Inc.*,
   84 S.W.3d 212 (Tex. 2002) ...................................................................................... 72
*Tex. Educ. Agency v. Leeper,*
   893 S.W.2d 432 (Tex.1994) ..................................................................................... 53
*Tex. Lottery Comm'n v. First State Bank of DeQueen*,
   325 S.W.3d 628 (Tex. 2010) .................................................................................... 51
*Tex. Natural Res. Conservation Comm'n v. White*,
   46 S.W.3d 864 (Tex.2001) ....................................................................................... 43
*Tex. Parks & Wildlife Dep't v. Sawyer Trust,*
   354 S.W.3d 3843 (Tex.2011) ................................................................................... 53
*Texas A & M Univ. Sys. v. Koseoglu,*
   233 S.W.3d 835 (Tex. 2007) .................................................................................... 36
*Texas Ass'n of Bus. v. Texas Air Control Bd.*,
   852 S.W.2d 440 (Tex. 1993) .............................................................................. 43, 78
*Texas Dep't of Ins. v. Reconveyance Servs., Inc.*,
   306 S.W.3d 256, 258 (Tex. 2010) ........................................................................... 51
*Texas Dep't of Parks & Wildlife v. Miranda,*
   133 S.W.3d 217 (Tex. 2004) ................................................................... 35, 36, 37, 70
*Texas Dep't of Transp. v. Sefzik,*
   355 S.W.3d 618 (Tex. 2011) .................................................................................... 51
*Texas Educ. Agency v. Cypress–Fairbanks Indep. Sch. Dist.,*
   830 S.W.2d 88 (Tex.1992) ....................................................................................... 73
*Texas Mun. League Intergovernmental Risk Pool v. Texas Workers' Comp.*
   *Comm'n,*
   74 S.W.3d 3773 (Tex. 2002) .............................................................................. 41, 68
*Texas Nat. Res. Conservation Comm'n v. IT-Davy*,
   74 S.W.3d 849 (Tex. 2002) ................................................................................ 44, 45
*Texas State Bd. of Examiners in Optometry v. Carp,*
   162 Tex. 1, 343 S.W.2d 242 (1961) ........................................................................ 73
*Texas Tech Univ. Health Scis. Ctr. v. Rao,*
   105 S.W.3d 763 (Tex. App. 2003-Amarillo, pet. dism'd) ...................................... 40

*Texas Water Comm'n v. City of Fort Worth,*
    875 S.W.2d 332 (Tex. App. – Fort Worth, 1994 writ denied) ........................... 63
*Thomas v. Beaumont Heritage Soc.,*
    339 S.W.3d 900 (Tex. App. – Beaumont 2011, pet.denied) ............................. 79
*Town of Flower Mound v. Rembert Enters.,*
    369 S.W.3d 465, 474 (Tex. App.-Fort Worth 2012, pet.denied)........................51
*Wichita Falls State Hosp. v. Taylor,*
    106 S.W.3d 692 (Tex. 2003)............................................................. 39
*Willacy Cnty. Water Control & Improvement Dist. No. 1 v. Abendroth,*
    177 S.W.2d 936 (Tex. 1944)............................................................. 38


**Statutes**
Tex. Civ. Prac. & Rem Code § 51.014(a)(8) ................................................. 15, 32
Tex. Civ. Prac. & Rem. Code § 37.006(b)................................................... 51
Tex. Civ. Prac. & Rem. Code § 51.014(b), (c) .......................................... 32
Tex. Const. art III, § 52 ................................................................. passim
Tex. Const. art XI, § 3..................................................................... 37
Tex. Const. art. XVI, § 59 ................................................................. 38, 58
Tex. Gov't Code § 791.001.................................................................. 62
Tex. Gov't Code § 791.011(e) ............................................................. 64
Tex. Gov't Code § 791.026(a)(1), (g)...................................................... 62
Tex. Gov't Code §§ 22.201, 22.220 ....................................................... 15
Tex. Gov't Code § 791.011(c) ............................................................. 58, 62
Tex. Gov't Code §§ 2001.045, 2001.146(c), 2001.171 ..................................... 77
Tex. Water Code, Chapter 13................................................................ 27, 28
Tex. Water Code, Chapter 65................................................................ 16, 58, 65
Tex. Water Code § 13.002(19).............................................................. 46
Tex. Water Code § 49.002 ................................................................. 59
Tex. Water Code § 13.248 ................................................................. 24
Tex. Water Code § 49.321 ................................................................. 27
Tex. Water Code § 65.011 ................................................................. 58
Tex. Water Code § 65.012(1)............................................................... 58
Tex. Water Code §§ 65.012, 65.201 ....................................................... 65
Tex. Water Code §§ 65.723 – 65.726 ...................................................... 27
Tex. Water Code § 65.727 ................................................................. 26

**Regulations**

16 Tex. Admin. Code § 22.264(c)............................................................. 76

**Other Authorities**

35 Tex. Prac., County And Special District Law § 5.14............................ 62
*Antitrust Jurisdiction and Remedies in an Electric Utility Price Squeeze,*
    52 U. Chi. L.Rev. 1090 (1985) ......................................................... 73
HB 1600 ............................................................................................. 50, 52
HB 1700 .................................................................................................. 48
HB 4172 .................................................................................................. 25
SB 567 ....................................................................................... 48, 50, 52
Tex. Att'y Gen. Op. No. JC-0335 (2001) ............................................... 38

No. 03-16-00214-CV

IN THE
COURT OF APPEALS
FOR THE
THIRD DISTRICT OF TEXAS

CHISHOLM TRAIL SUD STAKEHOLDERS GROUP,

Appellant,

V.

CHISHOLM TRAIL SPECIAL UTILITY DISTRICT, AND DISTRICT DIRECTORS DELTON ROBINSON, ED PASTOR, MIKE SWEENEY, JAMES PLETCHER, ROBERT KOSTKA, DAVID MASERANG, GARY GOODMAN, AND ROBERT JOHNSON, JR.; THE PUBLIC UTILITY COMMISSION OF TEXAS; ET AL.,

Appellees.

From the 419th Judicial District Court of
Travis County, Texas

**APPELLANT'S BRIEF**

**I.**
**STATEMENT OF THE CASE**[1]

1.1   This case concerns the ability of Texas citizens to seek judicial relief for the

unauthorized, improper acts of their public officials, political subdivisions, and

state agencies act in violation of the Texas Constitution and statutes.  The ruling of

---

[1] This Statement is supported by the record below which consists of the original Clerk's Record, reference to which is by "CR"; and the original Reporter's Record, reference to which is by "RR".

the District Court has denied these citizens the opportunity to present evidence of these wrongful acts.

1.2     Chisholm Trail Special Utility District ("CTSUD") is a water district created to serve a rural area in portions of Bell, Burnet and Williamson Counties. CR 477, 481. CTSUD's Directors resolved to transfer the entire water system, the Certificate of Convenience and Necessity, and all assets to the City of Georgetown ("City"). CR 485. CTSUD and the City thereafter entered into an asset transfer agreement and requested the Public Utility Commission's approval of the transaction. CR 486-488. The transaction would: (i) grant CTUSD's assets to the City in violation of Article III, § 52(a) of the Texas Constitution; (ii) render CTUSD legally incapable of providing water utility service to its constituents; (iii) illegally nullify CTSUD landowners' and consumers' statutory right to vote on water utility issues; and (iv) affect an dissolution of CTSUD. CR 492-507. Accordingly, the Chisholm Trail SUD Stakeholders Group ("Appellant") filed suit for declaratory and injunctive relief necessary to remedy the Appellee's unconstitutional, unlawful, and *ultra vires* acts. CR 509-517. Appellees asserted pleas to the jurisdiction claiming that the doctrines of sovereign immunity, governmental immunity, primary jurisdiction and/or exclusive jurisdiction shield their unlawful actions from judicial review. CR 3-5, 15-16, 22-24, 31-35. The

trial court erroneously granted those pleas and dismissed Appellant's claims with prejudice. CR 657-661. Therefore, Appellant brings this interlocutory appeal, respectfully requesting that the Court of Appeals reverse the trial court order granting the Appellees' pleas to the jurisdiction, and remand this lawsuit for further proceedings. *See e.g.*, CR 662-663.

## II.
## STATEMENT OF JURISDICTION

2.2 This Court has appellate jurisdiction to review civil interlocutory orders of Travis County district courts that grant pleas to the jurisdiction filed by governmental units. Tex. Gov't Code §§ 22.201, 22.220; Tex. Civ. Prac. & Rem Code § 51.014(a)(8).

## III.
## STATEMENT ON ORAL ARGUMENT

3.1 Appellants request the opportunity to present oral argument to: (a) provide the Court a more complete understanding of the facts presented in this appeal; (b) allow the Court to better analyze the complicated legal issues presented in this appeal; and (c) significantly aid the Court in deciding this case.

## IV.
## ISSUE PRESENTED

Issue 1: Whether the trial court erred in granting Appellees' pleas to the jurisdiction.

# V.
## STATEMENT OF FACTS

## A. Identification of Parties.

5.1     Appellant Chisholm Trail SUD Stakeholders Group ("Appellant") is a domestic nonprofit corporation. CR 477. Appellant is organized to advocate for and protect the interests of residents and landowners in the rural areas of Bell, Burnet and Williamson Counties in receiving adequate water utility service. *Id.*

5.2     Appellee Chisholm Trail Special Utility District ("CTSUD" or "District") is a special utility district created in 1990 by order of the Texas Natural Resources Conservation Commission (now, the Texas Commission on Environmental Quality ("TCEQ")), pursuant to Chapter 65 of the Texas Water Code. CR 481-482. The District's geographic area covers approximately 257,116 acres and encompasses portions of Bell, Burnet, and Williamson Counties. CR 477. The District does not include any portion of the incorporated area of the City of Georgetown. *Id.* The District has provided retail water utility service to this area pursuant to a Certificate of Convenience & Necessity ("CCN") No. 11590 issued by the TCEQ; jurisdiction over this certificate has now been statutorily transferred to the Public Utility Commission ("PUC"). CR 477-478. The District serves more than 7,000 water utility customers. CR 482. The District is governed by a seven-member board of directors, elected at-large by the qualified voters in

the District. *Id.* The District has operated as a viable retail water utility for more than twenty years. CR 481-485, 493.

5.3 Appellees Delton Robinson, C.E. ("Ed") Pastor, Mike Sweeney, Robert Kotska, James Pletcher, David Maserang, Pat Gower, Gary Goodman, and Robert Johnson, Jr., are the individuals who are serving or have served as Directors of CTSUD, a political subdivision of the State of Texas, duly formed and existing under the laws of the State of Texas. CR 478. These Appellees (collectively referred to as the District "Board Members" or "Directors") are being sued in their official capacities as the current and former board members for CTSUD. *Id.*

5.4 Appellee the City of Georgetown ("City" or "Georgetown") is a home rule, municipal corporation located in Williamson County, Texas. CR 482. The City has a council-manager form of government. *Id.* The City provides retail water utility services pursuant to a CCN issued by the TCEQ (i.e., CCN No. 12369). *Id.* The Georgetown Utility System ("GUS") is a division of the City of Georgetown. *Id.* GUS is responsible for the management and operations of the City's electric, water and wastewater systems. *Id.* GUS has an advisory board that reviews policy, rates, and contracts and makes recommendations related to these issues to the City Council. Recommendations by the GUS advisory board are subject to ratification by the City Council. *Id.* The GUS advisory board is selected

by the City Council. *Id.*

5.5    Appellees Donna L. Nelson, Kenneth W. Anderson, Jr., and Brandy Marty Marquez ("Commissioners") are the individuals appointed to serve as the three commissioners of the PUC, as prescribed by Tex. Util. Code § 12.051, and are being sued in their official capacities. CR 478.

### B.    Asset Transfer and Administrative Proceedings.

5.6    In September 2013, the District and the City entered into a written Asset Transfer and Utility System Consolidation Agreement ("Agreement" or "Asset Transfer Agreement"). CR 485. The Agreement provided for the transfer of the District's entire water system to the City, including all of the District's facilities, property, virtually all of its cash, contracts, obligations, and all of the District's certificated water service area. *Id.*

5.7    The Agreement further provided that the closing of this transaction was conditioned upon the parties obtaining consent from various parties, including the "[a]pproval by the TCEQ for the transfer of the CTSUD CCN and the Assets." CR 486. As such, in November 2013, the City filed an Application for Sale, Transfer, or Merger of a Retail Public Utility" ("STM Application" or "Application") with the TCEQ. *Id.*

5.8 Numerous persons protested the proposed transaction and requested a contested administrative hearing by the TCEQ, including the members of the Appellant nonprofit corporation, the Bell County Commissioners Court, Texas Senator Troy Fraser, and Texas Representative Jimmie Don Aycock. CR 486-487. These protestors assert that the interests of the water utility customers, businesses, and landowners within the District are best served by its continued operation as a freestanding district that is governed by a board of directors who are electorally and politically accountable to the voters within the District's boundaries. *Id.* The protestants also assert that the transfer of the CTSUD's assets and CCN to City of Georgetown would cede control of water utility service decisions for areas well beyond the Georgetown city limits to the Georgetown City Council. *Id.* Accordingly, the protestants additionally assert that this would disenfranchise, alienate and politically isolate the customers, businesses, and landowners in the rural area of the District, leaving them with no representation in their water matters because all customers in the unincorporated areas of Williamson County (outside the City of Georgetown), and the customers in Bell and Burnet Counties cannot vote for the Georgetown City Council. *Id.* Consequently, the protestants assert that this action would be detrimental to the interests and property values of customers, businesses, and property owners in the portions of Bell, Burnet, and

Williamson counties located outside Georgetown's city limits. *Id.* The protestants assert that these actions by the District and the City of Georgetown violate numerous statutes and provisions of the Texas Constitution. CR 490.

5.9 In May 2014, the matter was referred to the State Office of Administrative Hearings ("SOAH") for a contested case hearing. CR 487. Following a preliminary hearing, the Administrative Law Judge determined that the TCEQ had jurisdiction over Georgetown's STM Application and admitted parties, including five protestants ("Protestants"), three of whom are also Appellant's members. *Id.*

5.10 On August 21, 2014, the District's Board adopted a resolution that purports to: (a) authorize the District's president to execute an Amended Asset Transfer Agreement with Georgetown; (b) authorize the District's president to execute an Operations Agreement between the District and Georgetown; (c) authorize the District's president to consummate the transactions contemplated by the Amended Asset Transfer Agreement and Operations Agreement; and (d) approve the adoption of a Transition Surcharge of $4.75 per meter per month for District customers "to fund CTSUD's operating costs and expenses associated with transitioning service to the City of Georgetown and with maintaining CTSUD's

CCN." CR 487-488. The Amended Asset Transfer Agreement and the Operations Agreements were not attached to or incorporated into the resolution. *Id.*

5.11 On September 1, 2014, Georgetown's STM Application was statutorily transferred from the subject matter jurisdiction of the TCEQ to the PUC. CR 488. The filings in that matter (SOAH DOCKET NO. 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 and PUC DOCKET NO. 42861) are publicly available online. *Id.*[2]

5.12 On September 12, 2014, CTSUD and the City executed a First Amendment to Asset Transfer and Utility System Consolidation Agreement ("First Amendment" or "First Amended Agreement") which incorporated several documents related to the transaction, including a Service Area Operations and Management Agreement ("Operations Agreement"). *Id.*

5.13 The aforementioned resolution provides that pursuant to the Operations Agreement, "the City will provide water utility services within the CTSUD CCN." Accordingly, the Operations Agreement generally provides that the City will be responsible for operating the District's water system and have all powers of District Management and staff. CR 488-489. Under the Agreement, the parties claimed that the District shall continue to exercise all of the powers and duties of the CCN holder for water utility service within the District's CCN. *Id.*

---

[2] The filings in this docket may be accessed by visiting http://interchange.puc.texas.gov/WebApp/Interchange/application/dbapps/filings/pgSearch.asp and searching for control number 42861. Those filings were incorporated by reference in the Appellant's and Appellees' pleadings. *See e.g.*, RR 64-66.

Nevertheless, under the First Amended Agreement, the District transferred all of its water system to the City and adopted the City's policies and rate structure (not including the Transition Surcharge). *Id.* Further, the District agreed that the City will bill, collect, and retain water service revenues collected within the District's CCN, less a portion of the aforementioned Transition Surcharge. *Id.*

5.14 Following the execution of the First Amendment, CTSUD consummated the transaction, transferring its water system and nearly all of its assets to the City. CR 489. Since the closing of the asset transfer, Appellants allege that the District effectively ceased to exist. *Id.* The District no longer operates an office. *Id.* Calls to the District's telephone number (254-793-3103) were greeted with a recording stating that caller had reached "Georgetown Utility Systems, formerly Chisholm Trial Special Utility District." *Id.* The recorded messages also indicated that the District's phone number will be discontinued. *Id.* Further, District customers now receive water utility bills from the "Georgetown Utility Systems Western District Office." *Id.* The First Amendment and Operations Agreement also made the City responsible for seeking approval to transfer the District's CCN. *Id.*

5.15 The City produced a Financial Report for fiscal year 2014, which provides that the City experienced a 91.8% increase in revenue over the prior year,

including $71.5 million in capital grants and contributions due primarily to the acquisition of CTSUD. CR 489-490. Hence, under the First Amendment to the Asset Transfer Agreement, the City acquired the District's water system, which the City has valued at more than $70 million, as well as the District's water reserves and the revenues from its profitable retail water utility. *Id.* Appellant alleges that the City's valuation fails to account for additional assets and receivables, including water rights, and is considerably below market value. *Id* at n. 2.

5.16 In September 2014, the Protestants in the contested case hearing filed a motion seeking the dismissal of Georgetown's STM Application. CR 490. The Motion provided, *inter alia*, that Georgetown's STM Application seeks to illegally revoke the District's CCN, dissolve the District, and transfer the District's assets to Georgetown. *Id.* Further, the motion provided that the PUC lacks jurisdiction to approve Georgetown's STM Application and affect an illegal dissolution of the District, as well as an illegal acquisition of the District's water system and CCN. *Id.* The PUC Staff responded by asserting that the PUC does not have jurisdiction to evaluate whether the STM Application or Asset Transfer Agreement violates the statutory requirements related to dissolution of special utility districts. Id.[3] The Administrative Law Judge agreed and ordered that the proceeding continue solely

---

[3] *See* Staff's Response to Protestants' Motion for Summary Disposition (Item No. 131) at pg. 3 (available online here:
http://interchange.puc.texas.gov/WebApp/Interchange/application/dbapps/filings/pgSearch_Results.asp?TXT_CNT R_NO=42861&TXT_ITEM_NO=131).

regarding the issues regarding the proposed transfer of the District's CCN to Georgetown. *Id.* The Public Utility Commissioners refused to hear an appeal of that decision, and later issued a Preliminary Order identifying the issues that must be addressed by the ALJ. *Id.* Notably, the Preliminary Order indicated that the proceeding would not address the dissolution of the District or the approval of the Asset Transfer Agreement. *Id.*[4]

5.16 On January 15, 2015, Georgetown and the District entered into a Second Amendment to the Asset Transfer and Utility System Consolidation Agreement ("Second Amended Agreement" or "Second Amendment"). CR 491. The Second Amendment served primarily to provide that Georgetown and the District intended for the Asset Transfer Agreement to constitute a contract made under Texas Water Code Section 13.248. *Id.* The PUC later determined that this statute does not apply to Georgetown's Application. *Id.*[5] Nevertheless, the PUC also indicated that Georgetown's Applications may be processed under other provisions of the Water Code without any further amendment of the Application or further notice being published regarding the same. *Id.*[6]

---

[4] *See* the PUC's Preliminary Order (Item No. 180) at pgs. 3-11 (available online here: http://interchange.puc.texas.gov/WebApp/Interchange/application/dbapps/filings/pgSearch_Results.asp?TXT_CNTR_NO=42861&TXT_ITEM_NO=182).
[5] *See* PUC Preliminary Order (Item No. 182) at pg. 7.
[6] *See id.* at pgs. 5-6.

5.17   On April 4, 2015, House Bill 4172 was introduced in the Texas House of Representatives relating to the dissolution of CTSUD. CR 491. This bill was introduced in accordance with terms of the Asset Transfer Agreement providing that CTSUD and Georgetown will pursue efforts to seek passage of legislation that would authorize the immediate dissolution of the District. *Id.* The bill proposed legislation that would have authorized the District board to adopt an order that would dissolve the District and affect a transfer of its assets to Georgetown. *Id.* House Bill 4172 would have attempted to further preclude any judicial review of the Board's order dissolving the District. *Id.* On April 22, 2015, Defendant CTSUD Directors Delton Robinson and Michael Sweeney as well as other CTSUD and City representatives testified at a public hearing before the Texas House of Representatives' Special Committee on Special Purposes Districts in favor of House Bill 4172. *Id.* Conversely, several witnesses testified in opposition to House Bill 4172 and submitted letters to members of the legislature opposing the bill. *Id.* House Bill 4172 did not pass during the legislative session. *Id.*[7] Therefore, the CTSUD has not been legally dissolved. *Id.*

5.18   Appellant initiated this lawsuit on August 12, 2015. CR 636. Appellant's lawsuit alleges, *inter alia*, that the PUC lacks the authority or

---

[7] The legislative history for House Bill 4172 is publicly available on the Texas Legislature's website here: http://www.legis.state.tx.us/BillLookup/History.aspx?LegSess=84R&Bill=HB4172.

jurisdiction to process and approve Georgetown's Application because it affects an illegal dissolution of the District and transfer of the District's CCN and assets. See e.g., CR 499-506. The administrative proceeding, however, continued over the Protestants' objection that the Application was being improperly considered notwithstanding the pendency of this lawsuit challenging the illegality of the Asset Transfer Agreement and the PUC's lack of jurisdiction over the Application. CR 503. Ultimately, the PUC issued a final order approving the Application. *Id.* Thereafter, Protestants exhausted all available administrative remedies. *Id.*

5.19 On March 8, 2016, the Protestants petitioned a Travis County District Court for judicial review of the PUC's final order. CR 522-634. Protestants, who include members of the Appellant herein, petitioned in intervention of this lawsuit. *Id.*

**C. Instant Lawsuit and Pleas to the Jurisdiction.**

5.20 On March 8, 2016, Appellant filed its First Amended Petition. CR 476-521. Appellant seeks declaratory and injunctive relief against all Appellees. *See* CR 509-517. Notably, Appellant's First Amended Petition alleges and requests the trial court to make the following declarations:

> a. The District issued debt and/or loaned its credit, and therefore cannot dissolve pursuant to Texas Water Code section 65.727;

b.  The District cannot consolidate with the City of Georgetown pursuant to Texas Water Code sections 65.723 – 65.726;

c.  The District incurred bonded indebtedness and has not been inactive for five consecutive years, and therefore cannot dissolve pursuant to Texas Water Code section 49.321;

d.  The District is not otherwise authorized by Texas law to dissolve;

e.  The District, the District Directors, the City, the PUC and the Commissioners have engaged in an unlawful dissolution of the District;

f.  The City's Application, seeking PUC approval to transfer CTSUD's CCN to Georgetown, will render CTSUD incapable of providing water utility service within its own boundaries, in violation of state law.

g.  The District has transferred its public assets to the City in violation of article III, section 52 of the Texas Constitution;

h.  CTSUD transferred its water system to the City and cannot provide water utility service within the District's boundaries in violation of state law;

i.  The Asset Transfer Agreement and its amendments, violate Texas law, contravene public policy, and are void;

j.  Georgetown's Application seeks PUC approval to affect an illegal dissolution of the District and transfer of the District's CCN and assets;

k.  The PUC lacks jurisdiction over Georgetown's Application;

l.  Chapter 13 of the Texas Water Code does not provide the PUC with authority or jurisdiction to affect a dissolution of the District;

m. Chapter 13 of the Texas Water Code does not provide the PUC with authority or jurisdiction to render the District incapable of providing water utility service within its own boundaries;

n. Chapter 13 of the Texas Water Code does not provide the PUC with authority or jurisdiction to nullify the District landowners' and consumers' statutory right to vote on water utility issues;

o. The Commissioners committed *ultra vires* acts outside of their legal authority in approving the Application filed by Georgetown to effectuate the Asset Transfer Agreement;

p. The District and the Defendant Directors of the District have violated the Texas Open Meetings Act; and

q. The Defendant Directors of the District committed *ultra vires* acts outside of their legal authority in approving and effectuating the Asset Transfer Agreement.

CR 509-513.

Further, Appellant requested that the trial court issue injunctive relief, both temporary and permanent:

(a) enjoining the transfer of the District's assets and water system to the City;

(b) enjoining Defendants from taking any further acts under the Agreement (including amendments);

(c) enjoining the City from collecting any revenue from the customers of the District, including the illegal surcharge;

(d) enjoining the PUC, the Commissioners, or any administrative law judge from making any decision or final order regarding Georgetown's Application;

(e)    staying or enjoining all proceedings before the PUC and State Office of Administrative Hearings related to Georgetown's Application, pending further order of the Court;

(f)    voiding and/or enjoining the illegal and *ultra vires* acts of the PUC and its Commissioners;

(g)    enjoining the transfer of the District's CCN to the City;

(h)    enjoining Defendants from taking further acts without lawful authority, as set forth above;

(i)    preventing the dissolution, transfer or waste of the District's assets and water system;

(j)    issue injunctive relief necessary to remedy the PUC's illegal acts and the Commissioners' *ultra vires* acts; and

(k)    issue any injunctive relief necessary to remedy Defendants' illegal expenditures of public funds under an contract that is void or illegal.

CR 513-514.

5.21 Appellees responded to Appellants' lawsuit by asserting pleas to the jurisdiction. CR 3-37. The pleas to the jurisdiction filed by the City, CTSUD and the Directors are very similar. *See id.* Accordingly, Appellant's will refer to them collectively as the "Chisholm Defendants' Pleas to the Jurisdiction", except where specifically indicated. All of the Appellees' pleas to the jurisdiction assert that the Appellants' claims are barred by sovereign or governmental immunity. *Id.* The Appellees also alleged that the PUC has either exclusive or primary jurisdiction

over Appellant's claims which should subject this lawsuit to dismissal or abatement. CR 34-35.

5.22 On March 8, 2016, the trial court conducted a hearing on the Appellee's pleas to the jurisdiction. RR 6-75. Three days later, the presiding judge signed the court's Order on Defendants' Pleas to the Jurisdiction and Special Exception ("Order"). CR 657-661. The Order granted the pleas to the jurisdiction filed by CTSUD's, the District's and Georgetown's (the "Chisholm Defendants"), and ordered that the following claims be dismissed with prejudice:

a. Appellant's requests for a declaratory judgment that:

    (i)    the Chisolm Defendants have acted illegally and *ultra vires* by acting to illegally dissolve CTSUD;

    (ii)    Defendants have acted illegally and *ultra vires* by acting to illegally transfer CTSUD's assets to the City;

    (iii)    the Asset Transfer Agreement, including any amendments, between CTSUD and the City is illegal and void;

    (iv)    Georgetown's Application seeks PUC approval to affect an illegal dissolution of the District and transfer of the District CCN and assets;

    (v)    PUC lacks jurisdiction over Georgetown's Application; and

b. Appellant's requests for injunctive relief:

    (i)    enjoining, staying, voiding, and reversing Defendants' illegal and *ultra vires* acts;

(ii)    enjoining, staying, voiding, reversing, and preventing any acts to implement the Asset Transfer Agreement;

(iii)    enjoining the transfer of the District's CCN;

(iv)    enjoining, staying, voiding, and reversing CTSUD's actions related to the transfer of CTSUD's CCN to the City of Georgetown and the transfer of CTSUD's assets pursuant to the Asset Transfer Agreement and amendments; and

(v)    enjoining, staying, reversing, voiding, and preventing the effectiveness of the transfer of CTSUD's CCN to the City of Georgetown and the transfer of CTSUD's assets pursuant to the Asset Transfer Agreement and amendments.

CR 658-661.

Additionally, the Order granted the PUC's plea to the jurisdiction and ordered that the following claims be dismissed with prejudice:

a.    Appellant's requests for a declaratory judgment that:

(i)    the PUC lacks jurisdiction over Georgetown's Application;

(ii)    the Commissioners have acted illegally and *ultra vires* by processing and approving Georgetown's Application; and

b.    Appellant's requests for injunctive relief:

(i)    enjoining, staying, voiding, and reversing Defendants' illegal and *ultra vires* acts;

(ii)    staying and enjoining all proceedings before the PUC and State Office of Administrative Hearings related to Georgetown's Application, including any amendments, pending further order of the Court;

(iii)    enjoining, staying, voiding, and reversing any proposal for decision or final order by the PUC and/or any presiding officer who has or will conduct any hearing (including any Administrative Law Judge with SOAH) related to Georgetown's Application, including any amendments;

(iv)    enjoining the transfer of the District's CCN to Georgetown;

CR 659-660.

5.23 The trial court's Order did not grant any Appellees' pleas to the jurisdiction as to Appellant's claims under the Texas Open Meetings Act ("TOMA"). Rather, the trial court granted the City's special exceptions; ordering Appellant to re-plead its claim that the Chisholm Defendants violated TOMA. CR 660-661. Pursuant to Section 51.014(a)(8) of the Civil Practice & Remedies Code, Appellant appealed from the trial court's Order granting the pleas to the jurisdiction of the governmental units. CR 662-671. Appellees' pleas to the jurisdiction were filed and requested for submission or hearing earlier than the 180th day after the Appellees filed their original answer in the trial court. *See* CR 3-5, 657-661. Accordingly, Appellant's interlocutory appeal stayed all other proceedings in the trial court pending resolution of its appeal of the trial court's Order granting Appellees' pleas to the jurisdiction. Tex. Civ. Prac. & Rem. Code § 51.014(b), (c). Therefore, this appeal does not address Appellant's claims under TOMA or the trial court's order granting the City's special exceptions thereto.

## VI.
## SUMMARY OF AGRUMENT

6.1  CTSUD is a water district created to serve a rural area in portions of Bell, Burnet and Williamson Counties. CTSUD's Directors resolved to transfer its entire water system, Certificate of Convenience and Necessity, and its assets to the City of Georgetown ("City"). CTSUD and the City thereafter entered into an asset transfer agreement, and requested the Public Utility Commission's approval of the transaction. The transaction would: (i)  grant CTUSD's assets to the City in violation of Article III, § 52(a) of the Texas Constitution; (ii)  render the CTUSD legally incapable of providing water utility service to its constituents; (iii) illegally nullify CTSUD landowners' and consumers' statutory right to vote on water utility issues; and (iv) affect an dissolution of CTSUD.  Appellant, a nonprofit corporation, organized to advocate for and protect the interests of residents and landowners in the rural areas of Bell, Burnet and Williamson Counties in receiving adequate water utility service, has associational standing to sue Appellees for declaratory and injunctive relief necessary to remedy their illegal acts and expenditures.  Accordingly, Appellant filed suit for declaratory and injunctive relief necessary to remedy the Appellee's unconstitutional, unlawful, and *ultra vires* acts.  Particularly, Appellant's lawsuit claims that the asset transfer violates Article III, Section 52(a) of the Texas Constitution and that the Agreement through

which the transfer was effectuated is void. Additionally, Appellant claims that the asset transfer, the Agreement, and the Application that the Chisholm Defendants filed seeking the PUC's approval of the transaction would: (i) illegally render the District incapable of providing water utility service to its constituents; (ii) illegally nullify the District landowners' and consumers' statutory right to vote on water utility issues; and (iii) effect an illegal dissolution of the District. Consequently, Appellant sued CTSUD, the City and the Directors for violating a constitutional prohibition and acting *ultra vires beyond their statutory authority*. Further, Appellants assert that the PUC is acting outside its statutory powers and cannot grant the Chisholm Defendants requested relief. Moreover, Appellants assert that the Commissioners acted *ultra vires* in processing the Application.

6.2     Appellees filed pleas to the jurisdiction claiming that the doctrines of sovereign immunity, governmental immunity, primary jurisdiction and/or exclusive jurisdiction shield their unlawful actions from judicial review. The Appellees' pleas were unfounded. The doctrines of sovereign and governmental immunity do not shield Appellees from lawsuits regarding their violation of Article III, Section 52(a) of the Texas Constitution. Similarly, the Directors' and Commissioners' actions taken without legal authority fall within the *"ultra vires* exception" to sovereign and governmental immunity. Further, the Uniform

Declaratory Judgment Act waives the PUC's sovereign immunity to a suit challenging its statutory authority. Moreover, the doctrines of primary or exclusive jurisdiction do not apply to Appellant's lawsuit. Those doctrines are either inapplicable or all available administrative remedies have been exhausted. Accordingly, Appellant's pleadings clearly allege facts that affirmatively demonstrated the trial court's subject matter jurisdiction.

6.3     Nevertheless, the trial court erroneously granted Appellees' pleas to the jurisdiction, and dismissed Appellant's claims with prejudice. Therefore, Appellant brings this interlocutory appeal, respectfully requesting that the Court of Appeals reverse the trial court order granting the Appellees' pleas to the jurisdiction and remand this lawsuit for further proceedings.

## VII.
## ARGUMENT

### A.     Pleas to the Jurisdiction – Standard of Review.

6.4     A defendant seeking dismissal of a case for want of jurisdiction may file a plea to the jurisdiction challenging the plaintiff's pleadings or challenging the existence of jurisdictional facts. *See City of Waco v. Kirwan*, 298 S.W.3d 618, 621–22 (Tex.2009). Where, as here, pleas to the jurisdiction challenge the plaintiff's pleadings, courts determine whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *See Texas Dep't*

*of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). This is a question of law which appellate courts review de novo. *Id.* To determine whether the plaintiff has met this burden, courts liberally construe the pleadings, taking all factual assertions as true and looking to the pleader's intent. *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex.2015) (per curiam). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007); *Miranda*, 133 S.W.3d at 227. Only if the pleadings affirmatively negate jurisdiction should the plea to the jurisdiction be granted without affording the plaintiff an opportunity to re-plead. *Miranda*, 133 S.W.3d at 227.

6.5    If a plea to the jurisdiction challenges the existence of jurisdictional facts, courts may consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence is undisputed or fails to raise a fact question on

the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id*, at 227-28. This standard mirrors the standard of review for summary judgments; the courts therefore take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in its favor. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009).

**B.      The trial court has jurisdiction pursuant to Article III, § 52(a) and Article V, § 8, of the Texas Constitution.**

6.6      The Texas Constitution places limits on the power of a local government to transfer funds to any other entity. Article III, section 52(a) of the Texas Constitution ("Section 52(a)") provides that the legislature may not authorize any county, city, or other political corporation of the state "to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever." Tex. Const. art. III, § 52(a); *see also id.* art. XI, § 3 (similar provision). These provisions bar donations of funds from one governmental entity to another, as well as donations from governmental entities to private entities. *See e.g., Harris Cnty. Flood Control Dist. v. Mann*, 140 S.W.2d 1098 (Tex. 1940); *San Antonio Indep. Sch. Dist. v. Board of Trs. of San Antonio Elec. & Gas Sys.*, 204 S.W.2d 22 (Tex. Civ. App.—El Paso 1947, writ ref'd n.r.e.); Tex. Att'y Gen. Op. No. JC-0335 (2001).

6.7      When a political subdivision transfers funds, it must be for a public

purpose with a clear public benefit received in return. *See Mann*, 140 S.W.2d at 258–59. To insure that the political subdivision receives its consideration, *viz.*, accomplishment of the public purpose, the political subdivision must retain some degree of control over the performance of the contract. *Key v. Comm'rs. Court of Marion Cnty.*, 727 S.W.2d 667, 669 (Tex. App.—Texarkana 1987, no writ). Hence, a political subdivision cannot grant funds to a municipal corporation, but it may contract with it to provide services or accomplish a purpose that the political subdivision is authorized to provide. *See* Tex. Att'y Gen. Op. No. JC-0335 (2001).

6.8  Water districts are political subdivisions. *See* Tex. Const. art. XVI, § 59; *Willacy Cnty. Water Control & Improvement Dist. No. 1 v. Abendroth*, 177 S.W.2d 936 (Tex. 1944). As such, the Texas Constitution prevents a special utility district from making a gift or grant of public funds or property to another public or private entity. Therefore, Article III, section 52(a) of the Texas Constitution applies to the actions of CTSUD and its Directors.

6.9  A contract to do a thing which cannot be performed without a violation of the law is void. *Philadelphia Indem. Ins. Co. v. White*, No. 14-0086, 2016 WL 2848487, at *11 (Tex. May 13, 2016); *Lewis v. Davis*, 199 S.W.2d 146, 148–49 (Tex. 1947); *Morales v. Hidalgo Cty. Irrigation Dist. No. 6*, No. 13-14-00205-CV, 2015 WL 5655802, at *2 (Tex. App.-Corpus Christi Sept. 24, 2015,

pet. denied) (examining whether employment contract authorized a payment of public funds in violation of Section 52(a)); *Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.,* 265 S.W.3d 496, 501 (Tex.App.-Dallas 2008, no pet.). Therefore, a contract that violates Section 52(a) is void. *See e.g., Magnolia Bend Volunteer Fire Dep't, Inc. v. McDonnell,* No. 09-03-051CV, 2003 WL 22922799, at *1 (Tex. App.-Beaumont Dec. 11, 2003, no pet.) (holding that deed placing title to the property in fire department's name was void as prohibited by Section 52(a)); *see also Hendee v. Dewhurst,* 228 S.W.3d 354, 378 (Tex. App.-Austin 2007, pet. denied) (recognizing that taxpayers have standing to sue in equity to enjoin the illegal expenditure of public funds, even without showing a distinct injury).

6.10 It is fundamental that the Constitution is the paramount law of the state. *Jones v. Ross,* 173 S.W.2d 1022, 1024 (Tex. 1943). Accordingly, common law doctrine like sovereign immunity generally may not abrogate the Texas Constitution. *See e.g., Frasier v. Yanes,* 9 S.W.3d 422, 426 (Tex. App.-Austin 1999, no pet.) (holding sovereign immunity does not bar cause of action under Article III, Section 52e of the Texas Constitution); *see also Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 695 (Tex. 2003) (holding that consent to suit may be found in a constitutional provision). Certain provisions of the Texas Constitution are self-executing or "self-enacting," and thus provide a right of

action against the government for violations without the need for legislative consent. *Steele v. City of Houston,* 603 S.W.2d 786, 791 (Tex.1980); *Spring Branch Mgmt. Dist. v. Valco Instruments Co., L.P.*, No. 01-11-00164-CV, 2012 WL 2923151, at *8 (Tex. App.-Houston [1st Dist.] July 12, 2012, no pet.); *Nueces Cty. v. Ferguson,* 97 S.W.3d 205, 221 (Tex. App.-Corpus Christi 2002, no pet). Such an action may seek declaratory and injunctive relief for violations of the Texas Constitution. *City of Beaumont v. Bouillion,* 896 S.W.2d 143, 149 (Tex.1995) (stating that "suits for equitable remedies for violations of constitutional rights are not prohibited"); *Spring Branch Mgmt. Dist. v. Valco Instruments Co., L.P.*, 2012 WL 2923151, at *8 (holding plaintiff was entitled to seek declaratory and injunctive relief for violations of the Texas Constitution); *De Leon v. City of El Paso,* 353 S.W.3d 285, 290–91 (Tex.App.-El Paso 2011, no pet.) (holding that city was not immune from equal protection claim for "declaratory and injunctive relief" because "governmental immunity does not bar suits for equitable relief for violations of the Texas Constitution"); *Garcia v. Corpus Christi Civil Serv. Bd.*, No. 13-07-00585-CV, 2009 WL 2058892, at *2 (Tex. App.-Corpus Christi July 16, 2009, no pet.); *Texas Tech Univ. Health Scis. Ctr. v. Rao,* 105 S.W.3d 763, 767 (Tex. App. 2003-Amarillo, pet. dism'd); *Bohannon v. Texas Bd. of Criminal Justice,* 942 S.W.2d 113, 118 (Tex.App.-Austin 1997, writ denied)

("Although there is no cause of action for damages, a plaintiff whose constitutional rights have been violated may sue for equitable relief").

6.11 A constitutional provision is self-executing or self–enacting if it requires no legislative action to put it into force and effect. *Ehlinger v. Rankin*, 9 Tex. Civ. App. 424, 426, 29 S.W. 240, 241 (1895). Such provisions are also said to be self-enacting when they supply a rule sufficient to protect the right given or permit enforcement of the duty imposed. *Frasier v. Yanes*, 9 S.W.3d 422, 426 (Tex. App. 1999); *Motorola v. Tarrant County Appraisal Dist.*, 980 S.W.2d 899, 902 (Tex.App.—Fort Worth 1998, no pet.). Article III, Section 52(a) is self-executing or self-enacting because it is a clear constitutional prohibition that requires no legislative action to put it into force and effect, and imposes a duty of compliance that is readily capable of enforcement. *See e.g.*, *Mitchell Cty. v. City Nat. Bank*, 43 S.W. 880, 881 (Tex. 1898) (recognizing that section 9 of article 8 and section 7 of article 11 are self-executing as all laws in conflict with these prohibitions are void). Accordingly, the courts have consistently exercised their jurisdiction to determine whether Section 52(a) has been violated. *See e.g.*, *Texas Mun. League Intergovernmental Risk Pool v. Texas Workers' Comp. Comm'n*, 74 S.W.3d 377, 383 (Tex. 2002) (discussing three-part test courts have developed to determine if act or payment accomplishes a public purpose consistent with section

52(a)); *Davis v. City of Lubbock*, 326 S.W.2d 699, 710 (Tex. 1959); *Byrd v. City of Dallas*, 6 S.W.2d 738, 740 (Comm'n App. 1928); *Morales v. Hidalgo Cty. Irrigation Dist. No. 6*, 2015 WL 5655802, at *2; *Key v. Commissioners Court of Marion Cty.*, 727 S.W.2d at 668. Therefore, Section 52(a) provides a right of action against the government for violations of that provision without the need for legislative consent or waiver of immunity.

6.12 Appellant's lawsuit alleges that CTSUD transferred its public assets to the City in violation Section 52(a), and that the Asset Transfer Agreement through which the transfer was effectuated is void. *See* CR 494-496. Accordingly, Appellant requests declaratory and injunctive relief setting aside the unconstitutional asset transfer and voiding the Asset Transfer Agreement. CR 509-517. As explained above, CTSUD's transfer of assets in violation of Section 52(a) provided Appellant the right to bring an action for declaratory and injunctive relief against Appellees for unconstitutional acts without the need for legislative consent or waiver of immunity. Stated another way; Section 52(a) is a constitutional waiver of Appellees' governmental immunity. Therefore, the trial court erred in granting the Order dismissing Appellant's claims for injunctive and declaratory relief for violations of Section 52(a), Texas Constitution.

**C.** **Appellant adequately pled claims against the CTSUD and City concerning constitutional violations.**

6.13 Pleaders are generally required to allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). In a suit against a governmental unit the pleader must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity or that immunity is inapplicable. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *Miller v. S. E. Texas Reg'l Planning Comm'n*, No. 03-11-00817-CV, 2013 WL 3724716, at *3 (Tex. App.-Austin July 11, 2013, no pet.). To determine if the plaintiff has met that burden, courts consider the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties. *Id*; *Tex. Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 868 (Tex.2001).

6.14 Appellant's lawsuit alleges that CTSUD transferred its public assets to the City in violation of Section 52(a) and that the Asset Transfer Agreement through which the transfer was effectuated is void. *See* CR 494-496. As explained immediately above, Section 52(a) provides citizens such as Appellants the right to bring an action for declaratory and injunctive relief against Appellees for violations of Section 52(a) without the need for legislative consent or waiver of immunity.

Accordingly, Appellant's pleadings affirmatively demonstrated the court's jurisdiction to hear the cause and that governmental immunity was either waived or inapplicable.

6.15 The Chisholm Defendants' pleas to the jurisdiction, meanwhile, assert without explanation, that the District and City are "immune from suit." CR 5, 16. Shortly before the hearing on Appellee's pleas to the jurisdiction, the Chisholm Defendants filed a brief in support of their pleas to the jurisdiction. *See* CR 38 *et seq*. In that brief, the Chisholm Defendants elaborate that "Plaintiff cites no statutory authority that clearly and unambiguously waives the City's or District's immunity." CR 49. The Chisholm Defendants wholly failed to consider or acknowledge that governmental immunity has been waived and/or is inapplicable under Section 52(a). Accordingly, the Chisholm Defendants' pleas to the jurisdiction as to CTSUD's and the City's alleged governmental immunity were erroneous, as was the trial court's Order granting the Chisholm Defendants' pleas against the alleged violation of the Texas Constitution.

6.16 The Chisholm Defendants also erroneously argued that the City and CTSUD are immune from Appellant's suit for declarations invalidating the Asset Transfer Agreement. CR 49-51. In making this argument, the Chisholm Defendants relied upon *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74

S.W.3d 849, 855-856 (Tex. 2002). Their reliance was misplaced. The portion of the *IT-Davy* opinion cited by the Chisholm Defendants concerns whether sovereign immunity bars a general contractor from suing a state agency for breach of contract. *See id.* at 851-852. The court held that immunity does bar such a suit, and that "private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim." *Id.* at 856. Hence, the pertinent holding in *IT-Davy* is that the UDJA does not provide courts with subject-matter jurisdiction over contract damage claims that are otherwise barred by sovereign or governmental immunity. However, as explained above, Section 52(a) provides Appellant an independent right to bring an action for declaratory and injunctive relief against Appellees for violations of Section 52(a) without the need for legislative consent or waiver of immunity. Appellant is not seeking damages against the Appellees. To the contrary, Appellant is seeking to enjoin an illegal act by Appellees. The use of a contract to consummate the illegal act does not exclude the illegal act from judicial scrutiny. Violations of the Texas Constitution and *ultra vires* acts cannot be covered by a contractual fig leaf to prevent the light of truth from exposing these wrongful acts. Accordingly, *IT-Davy* is not applicable and does not support the Chisholm Defendant's claim that the City and CTSUD are immune from

Appellant's request for declaratory relief. Therefore, it was error for the trial court to grant the Order dismissing Appellant's claims for injunctive and declaratory relief for violations of Section 52(a).

## D. Trial court has jurisdiction over Appellant's claims against PUC.

6.17 Appellant's lawsuit includes claims that the PUC lacks authority and jurisdiction to: (a) take action that would render CTSUD (a special utility district created under legislative authority to provide water utility service within its own boundaries) legally incapable of carrying out its statutory purpose; (b) take action that would nullify the District landowners' and consumers' statutory right to vote for a Board of Directors with authority to manage the District and govern its provision of water utility service; (c) take action that would effectively dissolve the District; or (d) process or approve an application that would effectively perform the three aforementioned actions. *See e.g.*, CR 511-512.

6.18 Georgetown and CTSUD are retail public utilities. *See* Tex. Water Code § 13.002(19). Each was granted a CCN to provide retail water utility service to their respective service areas. A retail public utility generally may not furnish, make available, render, or extend retail water utility service to any area to which retail water utility service is being lawfully furnished by another retail public utility without first having obtained a CCN that includes the area in which the

consuming facility is located. *Id.* § 13.242(a); *see also id.* §§ 13.252, 13.254. In other words, a CCN provides a retail public utility with the exclusive right (i.e., a monopoly) to provide retail water service within its certificated territory. Therefore, revoking CTSUD's CCN and amending Georgetown's CCN to include CTSUD's service area would render the District legally incapable of providing its own constituents with water utility service.

6.19  The District is a political subdivision that was created and conferred with statutory authority to provide its constituents with water utility service. *See e.g., id.* §§ 49.211, 65.012.  Accordingly, the laws of this State provide the landowners, consumers and qualified voters of CTSUD with the statutory right to vote for the management of their district. *Id.* §§ 65.022, 65.101 – 65.103. CTSUD does not encompass any portion of the incorporated area of Georgetown, and vice versa.  Accordingly, a PUC order revoking the District's CCN and amending Georgetown's CCN to include the District's service area would: (i) render the District legally incapable of providing water utility service to its constituents; (ii) preclude the District and its Directors from governing the manner in which water utility service is provided to their constituents; (iii) nullify the District landowners' and consumers' statutory right to vote on water utility issues affecting them; and (iv) would effect an illegal dissolution of the District.

6.20   Chapter 13 of the Water Code regulates water rates and services. *See id* §§ 13.001 – 13.523.   Subchapter G deals specifically with certificates of convenience and necessity. *See id.* §§ 13.241 – 13.257.

6.21   The 83rd Texas Legislature adopted acts transferring the economic regulation of water and sewer service from the TCEQ to the PUC. *See* Act of May 13, 2013, 83rd Leg., R.S., ch. 170 (HB 1700), § 2.96; 2013 Tex. Gen. Laws 725, 730; Act of May 13, 2013, 83rd Leg., R.S. ch. 171 (SB 567), § 96, 2013 Tex. Gen. Laws 772.   Accordingly, effective September 1, 2014, Chapter 13 transferred jurisdiction over CCN applications from the TCEQ to the PUC.   Consequently, in order to obtain a CCN for a particular area, a retail public utility generally must file an application requesting the PUC to either grant or amend its CCN. *Id.* §§ 31.241 – 13.244.   Likewise, an application must be filed to revoke a retail public utility's CCN (i.e., exclusive right) to provide water utility service to any portion of its service territory. *See id.* § 13.254.

6.22   The PUC was only granted authority to exercise *economic* regulation over water utility services.   Chapter 13 of the Water Code does not govern the creation, operation, or governance of special utility districts.   Those matters are addressed by Chapters 49 (General Law Districts) and 65 (Special Utility Districts). *See id.* 65.001(4), 65.011 – 65.023.   For example, Subchapter 65(H)

governs the process manner in which special utility districts may be consolidated or dissolved. *See id.* §§ 65.723 – 65.732. These statutes do not provide the PUC with any jurisdiction or authority in the dissolution or regulation of districts. Rather, Chapters 49 and 65 provide the Texas Commission on Environmental Quality with broad regulatory authority over districts. *See id.* §§ 49.001(2) (defining "commission" as the Texas Natural Resource Conservation Commission (a predecessor agency to TCEQ) and using "commission" throughout to identify the agency responsible for carrying out the duties of regulating general law districts); 65.001(4) (also defining "commission" as the Texas Natural Resource Conservation Commission and using "commission" throughout to identify the agency responsible for carrying out the duties of regulating an special utility districts). Accordingly, the PUC generally lacks jurisdiction to regulate special utility districts. Therefore, the PUC has no jurisdiction to take regulatory action in a manner that: (i) renders the District legally incapable of providing water utility service to its constituents; (ii) precludes the District and its Directors from governing the manner in which water utility service is provided to their constituents; (iii) nullifies the District landowners' and consumers' statutory right to vote on water utility issues affecting them; or (iv) effects the District's dissolution.

6.23 The PUC, nevertheless, claims that provisions in Chapter 13 of the Water Code provide it with jurisdiction to wholly revoke the District's CCN and amend Georgetown's CCN to include the District's entire service area. CR 34. This would exceed the PUC's statutory grant of economic regulatory authority. This action would also improperly encroach upon the authority of special utility districts (including their directors and voters who elect them) to operate, and the TCEQ's statutory regulatory authority over such districts. Accordingly, Appellant's pleadings include a challenge to the PUC interpretation of the statutes in Chapter 13 governing the revocation and amendment of water CCN's, including its construction of the acts of the 83rd Legislature that transferred the functions relating to the economic regulation of water and sewer service from the TCEQ to the PUC (i.e., HB 1600 and SB 567). *See* CR 499-506.

6.24 Appellant's pleadings also assert that the PUC lacks the authority and jurisdiction to revoke the District's CCN and amend Georgetown's CCN to include the District's service area, and that the Commissioners, in their official capacities, have acted *ultra vires by* adopting such an order.

6.25 The Uniform Declaratory Judgment Act requires that the relevant governmental entities be made parties to a declaratory judgment action that challenges the validity of ordinances or statutes, and thereby waives sovereign

immunity. Tex. Civ. Prac. & Rem. Code § 37.006(b); *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011); *City of El Paso v. Heinrich,* 284 S.W.3d 366, 373 n. 6 (Tex. 2009). Statutory challenges include claims that a statute is invalid for constitutional or non-constitutional reasons, and claims seeking interpretation or clarification of a statute. *See Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 634-635 (Tex. 2010); *City of Elsa v. M.A.L.,* 226 S.W.3d 390, 391–92 (Tex. 2007); *Lone Star Coll. Sys. v. Immigration Reform Coal. of Texas (IRCOT),* 418 S.W.3d 263, 271 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Town of Flower Mound v. Rembert Enters.,* 369 S.W.3d 465, 474 (Tex. App.-Fort Worth 2012, pet. denied); *Gatesco Q.M., Ltd. v. City of Houston,* 333 S.W.3d 338, 347–48 (Tex. App.-Houston [14th Dist.] 2010, no pet.). It is also well settled that suits asserting that government officers acted without legal authority or that seek to compel governmental officials to comply with statutory or constitutional provisions are *ultra vires* suits and are not subject to pleas of sovereign or governmental immunity. *Texas Dep't of Ins. v. Reconveyance Servs., Inc.,* 306 S.W.3d 256, 258 (Tex. 2010); *Heinrich,* 284 S.W.3d at 372. Courts may exercise jurisdiction over lawsuits where both type of claims are combined. *Lone Star Coll. Sys.,* 418 S.W.3d at 271 (*citing De Los Santos v. City of Robstown,* No. 13–11–00278–CV, 2012 WL 6706780, at *3-8 (Tex. App.-Corpus

Christi Dec. 13, 2012, no pet.)).

6.26 Appellant's First Amended Petition includes a declaratory judgment action challenging the PUC's interpretation of the statutes in Chapter 13 governing the revocation and amendment of water CCN's, including its construction of the acts of the 83rd Legislature that transferred the functions relating to the economic regulation of water and sewer service from the TCEQ to the PUC (i.e., HB 1600 and SB 567). The PUC claims jurisdiction under these statutes and thus is a relevant governmental entity which shall be made a party to Appellant's declaratory judgment action. Accordingly, the PUC's claim that it is immune from this suit is incorrect and inapposite. The Uniform Declaratory Judgment Act provides a cause of action to seek declaratory and injunctive relief from the improper construction of these legislative acts by the PUC. This improper construction has usurped the rights of the Appellant and resulted in *ultra vires* acts by the PUC. Consequently, the PUC's Plea to the Jurisdiction should have been denied. Therefore, the trial court erred when it entered the Order dismissing Appellant's claims for declaratory and injunctive relief against the PUC and its Commissioners.

**E.    Appellant's *ultra vires* claims do not implicate sovereign or governmental immunity.**

6.27 A government official commits an *ultra vires* act when he or she acts without lawful authority. *Heinrich,* 284 S.W.3d at 372. An official acts without lawful authority when he violates state law, acts beyond the limits of his authority, or misinterprets a law he is charged with administering. *See id.; Tex. Educ. Agency v. Leeper,* 893 S.W.2d 432 (Tex.1994) (suit challenging state officials' construction of compulsory school-attendance law); *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997) ("A private litigant does not need legislative permission to sue the State for a state official's violations of state law."); *Cobb v. Harrington,* 190 S.W.2d 709, 712 (Tex. 1945) (suit to declare government officials were wrongfully compelling plaintiffs to pay certain taxes).

6.28 Governmental immunity only extends to those government officers who are acting consistently with the law. *Houston Belt & Terminal Ry. Co. v. City of Houston,* No. 14-0459, 2016 WL 1312910, at *6 (Tex. Apr. 1, 2016); *Heinrich,* 284 S.W.3d at 372. Accordingly, while governmental immunity provides protection to the state and its officers, it does not bar a suit against a government officer for acting outside his authority—*i.e.,* an *ultra vires* suit. *Houston Belt & Terminal Ry. Co.,* 2016 WL 1312910, at *3; *Tex. Parks & Wildlife Dep't v. Sawyer Trust,* 354 S.W.3d 384, 393 (Tex.2011). To fall within this "*ultra vires* exception," a suit must allege that the officer acted without legal authority or failed to perform

a purely ministerial act. *Heinrich,* 284 S.W.3d at 372; *Fed. Sign,* 951 S.W.2d at 404. As a general rule, "a public officer has no discretion or authority to misinterpret the law." *Houston Belt & Terminal Ry. Co.,* 2016 WL 1312910, at *5 (*quoting In re Smith,* 333 S.W.3d 582, 585 (Tex.2011) (orig. proceeding)). Thus, a suit alleging that an officer's exercise of judgment or *limited* discretion without reference to, or in conflict with, the constraints of the law authorizing the official to act falls within the "*ultra vires* exception." *Id*; *Heinrich,* 284 S.W.3d at 372.

6.29 Appellant's pleadings assert that the CTSUD Directors and Public Utility Commissioners are acting without legal authority. With regard to the Commissioners, Appellant's First Amended Petition alleges that they have engaged in *ultra vires* acts while processing and approving Georgetown's Application. CR 506-507, 512-514. In support of this *ultra vires* claim the First Amended Petition further alleges that the Commissioners have engaged in *ultra vires* acts by processing and approving an application that would unlawfully: (i) render the District legally incapable of providing water utility service to its constituents; (ii) nullify the District landowners' and consumers' statutory right to vote on water utility issues; and (iii) affect a dissolution of the District. CR 507, 509-510. These *ultra vires* claims were made after the PUC filed its plea to the jurisdiction, which argued that Appellant's claims must be made against the

Commissioners rather than the PUC. *See* CR 32-33; *cf.* 506-507. The PUC, nevertheless, verbally requested dismissal of Appellant's *ultra vires* claims against the Commissioners without any explanation or authority and further declined the trial court's invitation to submit a written response or plea to the jurisdiction regarding Appellant's *ultra vires* claims. CR 66-68. The Commissioners presented no basis for a dismissal of the *ultra vires* claims against them. Accordingly, the PUC failed to present any jurisdictional challenge to those claims, and it was error for the court to enter the Order dismissing the *ultra vires* claims against the PUC Commissioners.

6.30 As to the CTSUD Directors, Appellant alleges that the Directors acted *ultra vires* by approving the Asset Transfer Agreement and the amendments thereto. CR 499. In support of this *ultra vires* claim, Appellant further alleges that the Directors have engaged in *ultra vires* acts in violation of the Texas Constitution, the Texas Water Code and other statutes by approving: (1) an agreement to illegally grant CTSUD's water system and other public assets to the City; (2) an agreement to illegally dissolve CTSUD; (3) an agreement to transfer illegally CTSUD's CCN to the City; and (4) expenditure of public funds to obtain the illegal dissolution of the District and the illegal transfer its assets to the City. CR 509. As briefed above, a lawsuit alleging that a government official acted

without legal authority falls within the *"ultra vires* exception" to sovereign and governmental immunity. Appellant's pleadings clearly allege that the District Directors and Commissioners acted *ultra vires*. Consequently, it was error for the trial court to enter the Order dismissing Appellant's *ultra vires* claims for declaratory and injunctive relief against the District Directors.

## F. Chisholm Defendants raised flawed arguments concerning Appellant's *ultra vires* claims.

6.31 The Chisholm Defendants acknowledge that *ultra vires* suits are not barred by governmental immunity. CR 51. Accordingly, the basis of their plea to the jurisdiction concerning Appellant's *ultra vires* suit is their argument that, "Plaintiff does not allege *any facts* that affirmatively demonstrate the court's jurisdiction with regard to its claims that the Directors entered into an illegal contract, illegally dissolved the District, or illegally granted public funds." CR 52 (emphasis added). However, this argument and the Chisholm Defendants' pleas to the jurisdiction are erroneous.

6.32 Appellant's pleadings allege that the District Directors approved an Agreement (and amendments thereto) to provide the City with: (i) CTSUD's retail water utility system; (ii) virtually all of CTSUD assets which the City valued at more than $70 million; (iii) CTSUD's contractual right to more than 11,000 acre feet of raw water per annum from the Brazos River Authority; and (iii) CTSUD's

CCN. *See* CR 485-490, 495-496. Appellant's pleadings additionally allege that CTSUD consummated the asset transfer. CR 489. Accordingly, Appellant alleges that the Director's approval of the Agreements caused CTSUD to be physically, financially, and legally incapable of providing retail water utility service to the District's customers and landowners. Hence, Appellant alleges that the Director's approval of the Agreement effectively dissolved the District, which has since ceased operating as a water utility. Consequently, Appellant alleges that the Director's acts resulted in the District granting virtually all of its public funds and property without a lawful purpose or clear public benefit received in return. Moreover, Appellant alleges that the asset transfer left the District without effective control over the provision of retail water utility service within the District's territory. These acts contravene the constitutional and statutory duties of the District Directors. Therefore, Appellant alleges that the Director's acted *ultra vires* in approving the Agreement because the Directors exceeded their statutory authority and violated Section 52(a), Texas Constitution.

6.33 Appellant's *ultra vires* claims include that the Director's lacked statutory authority to approve the Agreement. Particularly, Appellant alleges the Directors lacked authority to contract for the wholesale conveyance of CTSUD's assets and further lacked authority to dissolve the District.

6.34 CTSUD is a special utility district created pursuant to Chapter 65 of the Texas Water Code and is considered a conservation and reclamation district under Article XVI, Section 59, of the Texas Constitution. Tex. Const. art. XVI, § 59; Tex. Water Code § 65.011. Such a district may be created "to purchase, own, hold, lease, and otherwise acquire sources of water supply; to build, operate, and maintain facilities for the transportation of water; and to sell water to towns, cities, and other political subdivisions of this state, to private business entities, and to individuals." Tex. Water Code § 65.012(1). A district has the functions, powers, authority, and rights that will permit accomplishment of the purposes for which it is created. *Id.* § 65.201. Their assets and authorities may not be transferred or sold for purposes other than to carry out their lawful rights and duties. *See id.* § 49.213; Tex. Gov't Code § 791.011(c). Moreover, their assets may not be transferred in violation of Section 52(a). Tex. Const. art. III, § 52(a).

### 1. CTSUD had no legal authority to enter the Agreement.

6.35 In arguing that Appellant did not allege any facts that affirmatively demonstrate the court's jurisdiction, the Chisholm Defendants claim provisions in Chapter 49 of the Water Code provide the District had legal authority to enter into the Agreement. *See* CR 52-53. However, the Chisholm Defendants are incorrect.

6.36 "[Chapter 49] applies to all general and special law districts to the

extent that the provisions of this chapter do not directly conflict with a provision in any other chapter of this code or any Act creating or affecting a special law district. In the event of such conflict, the <u>specific provisions in such other chapter or Act shall control</u>." Tex. Water Code § 49.002 (emphasis added). Section 49.213 addressed the authority to issue contracts. It authorizes a district to enter into contracts "the board may consider desirable, fair, and advantageous for… the exercise of any other rights, powers, and duties granted to a *district*." *Id.* § 49.213(c)(7). As such, section 49.213 confirms that districts can enter contracts only to carry out their lawful rights, powers and duties.

6.37 The Chisholm Defendants, meanwhile, claim Sections 49.213(a) and 49.227 provides the District with authority to transfer all of its assets. They do not. Rather, both of those sections address the authority of a district to act jointly with another entity in the performance of the district's lawful duties. Section 49.213(a) provides:

> A district may contract with a person or any public or private entity <u>for the joint construction, financing, ownership, and operation</u> of any works, improvements, facilities, plants, equipment, and appliances necessary <u>to accomplish any purpose or function permitted by a district</u>, or a district may purchase an interest in any project used for any purpose or function permitted by a district.
>
> *Id.* § 49.213(a) (emphasis added).

Section 49.227, entitled "Authority to Act Jointly," similarly provides "[a] district

or water supply corporation <u>may act jointly with any other person or entity</u>, private or public, whether within the State of Texas or the United States, <u>in the performance of any of the powers and duties permitted</u> by this code or any other laws." *Id.* § 49.227 (emphasis added). These statutory provisions do not authorize a district to transfer all of its assets, or delegate its powers and responsibilities to another entity. Rather, they clearly contemplate that a district may act jointly with another entity in the performance of the district's lawful duties. Statutes may not be construed to accomplish an unconstitutional result. Appellant asserts that the Agreement renders CTSUD incapable of performing its lawful duties and violates Section 52(a). Sections 49.213(a) and 49.227 cannot authorize this Agreement, and Appellant is entitled to a hearing on the merits to present evidence of this constitutional violation.

6.38 The Chisholm Defendants also cite Section 49.226 and Section 791.026(a) of the Interlocal Cooperation Act as authority for the Agreement. Again, they are incorrect. Section 49.226 addresses the manner in which real and personal property may be sold or exchanged. Subsection 49.226(b) provides:

> Any property dedicated to or acquired by the district without expending district funds may be abandoned or released to the original grantor, the grantor's heirs, assigns, executors, or successors upon terms and conditions deemed necessary or advantageous to the district and without receiving compensation for such abandonment or release. <u>District property may also be abandoned, released, exchanged, or</u>

transferred to another district, municipality, county, countywide agency, or authority upon terms and conditions deemed necessary or advantageous to the district. Narrow strips of property resulting from boundary or surveying conflicts or similar causes, or from insubstantial encroachments by abutting property owners, or property of larger configuration that has been subject to encroachments by abutting property owners for more than 25 years may be abandoned, released, exchanged, or transferred to such abutting owners upon terms and conditions deemed necessary or advantageous to the district. Chapter 272, Local Government Code, does not apply to this section.

*Id.* § 49.226(b).

6.39   Section 49.226(b) does not grant contracting authority or authorize a district to transfer assets in a manner that violates Section 52(a). Nor does Section 49.226(b) authorize a special utility district to engage in any act that is inconsistent with purposes for which it was created under Chapter 65. *Cf. id.* 65.201 ("A district has the functions, powers, authority, and rights that will permit accomplishment of the purposes for which it is created."). Accordingly, Section 49.226(b) does not authorize this Agreement, because (as Appellant's allege) it renders CTSUD incapable of providing retail water utility service to the very constituents it was created to serve.

6.40   Section 791.026  of the Interlocal Cooperation Act likewise provides no authority for the Agreement. That Act permits various local governments to contract among themselves for the performance of a governmental function or

service that each party to the contract is authorized to perform individually. *See* Tex. Gov't Code § 791.011(c). The Act's purpose is to increase efficiency and effectiveness of local governments by expressly authorizing them to contract with one another and with agencies of the state. *See id.* § 791.001; *City of The Colony v. N. Texas Mun. Water Dist.*, 272 S.W.3d 699, 728 (Tex. App. – Fort Worth, 2008, no pet.). The Act itself does not grant additional powers to any government. 35 Tex. Prac., County And Special District Law § 5.14 (2d ed.). Section 791.026, provides in pertinent part:"

> (a) A municipality, district, or river authority of this state may contract with another municipality, district, or river authority of this state to obtain or provide part or all of: (1) water supply or wastewater treatment facilities;
>
> ...
>
> (g) The powers granted by this section prevail over a limitation contained in another law.
>
> Tex. Gov't Code § 791.026(a)(1), (g).

Reviewing this statute, the Third and Fourth Courts of Appeals have acknowledged that this provision does not authorize retail public water utilities to contract around the limitations found in the Water Code. In *Bexar Metro. Water Dist. v. Texas Com'n on Envtl. Quality*, 185ch S.W.3d 546 (Tex. App.—Austin 2006, pet. denied), the Third Court of Appeals acknowledged that interlocal contracts may be

employed to fulfill the obligations of a CCN holder, but do not prevail over the provisions in the Water Code. *See Bexar Metro*, 185 S.W.3d at 552 ("To be sure, the Interlocal Cooperation Act does not supersede the specific requirements for certificate [of convenience and necessity] applicants. It makes clear, however, the legislature's intent to allow municipalities to obtain the required capabilities to operate and construct water systems through contracts with river authorities and its belief that these contracts increase the efficiency and effectiveness of local government.") (emphasis added). The Fourth Court of Appeals similarly held that the Interlocal Cooperation Act does not provide water utilities with greater rights or obligations than those afforded the Water Code; providing as follows:

> Fort Worth also asserts that even if the Commission has jurisdiction over wholesale wastewater rates set by contracts, the Commission cannot alter a rate set by a contract between two cities, because Section 791.026 of the Texas Government Code (the "Interlocal Cooperation Act") places such contract rates beyond the Commission's jurisdiction. The Interlocal Cooperation Act merely allows municipalities to enter into contracts with each other. The statutory provision that the power to enter into contracts "prevails over a limitation in any other law" refers to other statutes and charters that might directly prohibit a municipality from signing contracts and does not preclude later legislative action regarding such a contract. The Water Code gives the Commission jurisdiction over contractual rates, including contractual rates agreed upon between municipalities.
>
> *Texas Water Comm'n v. City of Fort Worth*, 875 S.W.2d 332, 335 (Tex. App. – Fort Worth, 1994 writ denied) (emphasis added).

As such, section 791.026 of the Interlocal Cooperation Act does not provide the

District with any greater authority than it has under the Water Code. The Water Code does not provide retail public water utilities with the authority to sell their entire water systems. As the Appellant has alleged, such a transaction does not enable CTSUD to carry out its rights or obligations and does not fairly compensate it for any function or services performed. Further, it affects an illegal dissolution of the District. Therefore, section 791.026 of the Interlocal Cooperation Act does not authorize the District's asset transfer, and Appellant is entitled to a hearing on the merits to establish these facts.

6.41 The asset transfer also violates the Interlocal Cooperation Act because it fails to provide adequate compensation. Section 791.011 expressly requires that "[a]n interlocal contractual payment must be in an amount that fairly compensates the performing party for the services or functions performed under the contract." Tex. Gov't Code § 791.011(e). However, as discussed above, under the Agreement, Georgetown acquired the District's water system, which the City indicates had assets valued at more than $70 million, as well as the District's water reserves and the revenues from its profitable retail water utility. Further, the Operations Agreement provided Georgetown with all revenues from the District's water utility service, less a portion of a supplemental surcharge the District imposed specifically to cover its own costs while Georgetown sought PUC

approval for the transfer. CTSUD received no clear public benefit in return for this transaction, and thus the Agreement failed to provide the District with anything that could be considered fair compensation. As such, section 791.026 does not authorize the asset transfer. Therefore, to the extent that trial court concluded that the general contracting authority set out in Interlocal Cooperation Act and/or Chapter 49 of the Water Code authorized the Agreement, this was error. For jurisdictional purposes, these allegations of lack of fair consideration are considered true. Appellants are entitled to a hearing on the merits on these allegations.

## 2. Agreement Illegally Dissolved CTSUD.

6.42 In arguing that Appellant did not allege any facts affirmatively demonstrating the court's jurisdiction over its *ultra vires* claims, the Chisholm Defendants also argue that Directors actions have not affected the dissolution of the District. *See* CR 53-54. This argument is erroneous.

6.43 CTSUD was created in 1990 by order of the Texas Natural Resources Conservation Commission (now, TCEQ), pursuant to Chapter 65 of the Texas Water Code. CR 481. A principal purpose for its creation is to provide water utility service. *See* Tex. Water Code §§ 65.012, 65.201. Accordingly, CTSUD served as the exclusive retail water utility provider within the District's territory

for more than 20 years.

6.44 The Agreement provides for the transfer of CTSUD's entire retail water utility system and CCN to the City. Accordingly, as explained in Appellant's First Amended Petition, the Agreement provided that the District would be physically, financially, and legally incapable of providing retail water utility service to the very constituents it was created to serve. *See e.g.*, CR 496-499. The Chisholm Defendants generally do not dispute this.

6.45 In sections 65.727 through 65.731 of the Water Code, the Texas Legislature provided the sole method by which the directors of such a district are authorized to dissolve it. Appellant alleges and requests judicial declarations that CTSUD lacks authority to dissolve under these or any other authority. Again, the Chisholm Defendants generally do not dispute that the Directors lack authority to legally dissolve CTSUD. Accordingly, the Agreement expressly provided that CTSUD and the City would seek passage of legislature authorizing the Directors to dissolve the District. The Chisholm Defendants acknowledge that their efforts to obtain such legislative authority were unsuccessful. *See* CR 54.

6.46 CTSUD illegally consummated the transfer provided for in the Agreement, nonetheless. Hence, Appellant alleges that the District Directors acted without legal authority while taking action that effectively, and illegally, dissolved

CTSUD. Accordingly, Appellant's lawsuit clearly alleges that the District Directors acted *ultra vires* and thereby invoked the trial court's jurisdiction. Consequently, it was error for the trial court to enter the Order dismissing Appellant's *ultra vires* claims for declaratory and injunctive relief.

6.47 The Chisholm Defendants, nevertheless, dispute Appellant's *ultra vires* claim by arguing that Agreement did not dissolve CTSUD. CR 54. In other words, the Chisholm Defendants cite their own failure to obtain authority from the Legislature to dissolve CTSUD in efforts to claim Appellant failed to allege *any facts* affirmatively demonstrating the court's jurisdiction over its *ultra vires* claims. This circular argument does not defeat Appellant's *ultra vires* claim because the Agreement, on its face, evidences a dissolution and calls for the parties to obtain the requisite legal authorization, and Appellant has further alleged facts showing an illegal dissolution. *See e.g.*, *Lewis v. Davis*, 472, 199 S.W.2d at 149 (holding contract may be held void where illegality appears on the face of the contract or where facts show its illegality). Accordingly, to the extent that trial court concluded that Appellant's allegations that the Directors acted without authority to dissolve CTSUD failed to invoke the jurisdiction of the court, this was error. Therefore, the trial court's order dismissing Appellant's *ultra vires* claims should be reversed, and Appellant should be granted a hearing on the merits of its claims.

### 3. Asset Transfer provided for an illegal grant of public funds.

6.48 In arguing that Appellant did not allege any facts affirmatively demonstrating the court's jurisdiction over its *ultra vires* claims, the Chisholm Defendants finally argue that the Agreement did not provide for an illegal grant of public funds. CR 54-58. Principally, the Chisholm Defendants argue that Appellant's cannot claim that CTSUD transferred its assets to the City without adequate consideration. *Id.* This argument is erroneous.

6.49 Generally speaking, Section 52(a) of the Texas Constitution is intended to prevent the gratuitous grant of public funds to any individual, corporation, or purpose whatsoever. *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex.1995). Accordingly, when a political subdivision transfers funds, it must be for a public purpose with a clear public benefit received in return. *Texas Mun. League Intergovernmental Risk Pool*, 74 S.W.3d at 383. The Supreme Court has announced a three-part test to determine if a transaction accomplishes a public purpose consistent with Section 52(a). Specifically, the test prescribes that a political subdivision must: (1) ensure that the predominant purpose is to accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensure that the political subdivision receives a return

benefit. *Id.*

6.50   Appellant assert that the Agreement violates Section 52(a) because it was not for a public purpose *and* did not provide a clear benefit to the District, the District's customers, or landowners within the District. CR 494-498. For instance, Appellant claims the Agreement rendered the District legally incapable of providing water utility service to its constituents; (ii) illegally nullified the District landowners' and consumers' statutory right to vote on water utility issues, and affected an illegal dissolution of the District. *See* CR 509-510. Appellant's claim is not limited to an allegation of inadequate consideration on the face of the Agreement. *Cf. City of Lubbock v. Phillips Petroleum Co.*, 41 S.W.3d 149, 161 (Tex. App.-Amarillo 2000, no pet.) (city claiming Section 52(a) violation solely on basis that consideration under agreement was inadequate). Hence, that issue could not be dispositive of Appellant's claims of an illegal public grant of funds or its *ultra vires* claims.

6.51   Nevertheless, assuming *arguendo* that common law rules developed in actions on written contracts to assess the adequacy of consideration may be applicable to Appellant's claims, they do not support the trial court's Order of dismissal. The Chisholm Defendant's claim consideration is to be deemed inadequate if there is such a gross disparity in the relative values exchanged that it

shocks the conscience and is tantamount to fraud. *See* CR 55 (*citing Hindman v. Harding*, No. 03-04-00479-CV, 2005 WL 1038828, at *4 (Tex. App.-Austin May 5, 2005, no pet.)). This is a factual issue to be resolved by the trial court on a hearing on the merits. For example, in *Hindman*, the Third Court of Appeals reversed a trial court's partial summary judgment on consideration adequacy and remanded the matter for trial. *Hindman*, 2005 WL 1038828, at *4-5; *see also Martin v. Martin, Martin & Richards, Inc.*, 12 S.W.3d 120, 125 (Tex. App.-Fort Worth 1999, no pet.) (reversing summary judgment because evidence raised genuine issue of material fact as to consideration). Appellant alleges that Agreement provided the City with a *net* acquisition of the District's water system, which the City has valued at more than $70 million, as well as the District's water reserves and the revenues from its profitable retail water utility, notwithstanding CTSUD's claim that the City contributed a total of $5,285,070.45 toward the defeasance of the District's debt. *See* CR 489-490, 495-496. Further, Appellant alleges that the City greatly undervalued the assets it acquired. CR 490 n. 2. These claims more than adequately allege facts of grossly inadequate consideration. *See e.g., City of Ingleside v. City of Corpus Christi*, 469 S.W.3d at 590 (courts liberally construe the pleadings, taking all factual assertions as true); *cf. Miranda*, 133 S.W.3d at 227 (trial court cannot grant the plea to the jurisdiction

on a fact question regarding the jurisdictional issue; issue will be resolved by the fact finder). Accordingly, to the extent that trial court concluded that Appellant failed to allege that Agreement lacked adequate consideration or violated Section 52(a), or that the Directors acted without authority, this was error. Therefore, the trial court's order dismissing Appellant's *ultra vires* claims should be reversed and the matter remanded for a hearing on the merits.

### 4. Summary – Appellant invoked the trial court's jurisdiction over its *ultra vires* claims.

6.52 As explained above, a lawsuit alleging that a government official acted without legal authority falls within the "*ultra vires* exception" to sovereign and governmental immunity. Otherwise, citizens would be left without recourse or remedy for such improper, unauthorized acts. Appellant's pleadings clearly allege facts affirmatively asserting that the District Directors and Commissioners acted *ultra vires in excess of their constitutional and statutory authority*. Consequently, it was error for the trial court to enter the Order dismissing Appellant's *ultra vires* claims for declaratory and injunctive relief.

### G. PUC's alleged primary or exclusive jurisdiction does not affect the trial court's jurisdiction over Appellant's claims.

6.53 Appellees sought dismissal of Appellant's lawsuit by arguing that the PUC has either exclusive or primary jurisdiction over Appellant's claims which

should subject this lawsuit to dismissal or abatement. *See* CR 34-35, 59-60. These arguments are also incorrect and inapposite.

6.54 The concepts of exclusive and primary jurisdiction arise under distinctly different doctrines. The primary jurisdiction doctrine operates to allocate power between courts and agencies when *both* have authority to make initial determinations in a dispute. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002). Trial courts should allow an administrative agency to initially decide an issue when: (1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations. *Id.* If the primary jurisdiction doctrine requires a trial court to defer to an agency to make an initial determination, the court should abate the lawsuit and suspend finally adjudicating the claim until the agency has an opportunity to act on the matter. *Id.* (*citing Central Power & Light Co. v. Public Util. Comm'n*, 17 S.W.3d 780, 787 (Tex. App.-Austin 2000, pet. denied); *Roberts Express, Inc. v. Expert Transp., Inc.*, 842 S.W.2d 766, 771 (Tex. App.-Dallas 1992, no writ)).

6.55 Under the exclusive jurisdiction doctrine, "the Legislature grants an administrative agency the *sole* authority to make an initial determination in a

dispute." *Id.* (*citing Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex.2000)). An agency has exclusive jurisdiction "when a pervasive regulatory scheme indicates that Congress intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." *Id.* (*quoting* Humphrey, Comment, *Antitrust Jurisdiction and Remedies in an Electric Utility Price Squeeze*, 52 U. Chi. L.Rev. 1090, 1107 n. 73 (1985)). Whether an agency has exclusive jurisdiction depends on statutory interpretation. *Id.* (*citing Cash Am.*, 35 S.W.3d at 16; *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 447 (Tex.1996)). Typically, if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. *Id.* (*citing Cash Am.*, 35 S.W.3d at 15). Until then, the trial court lacks subject matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction. *Id.* (*citing Texas Educ. Agency v. Cypress–Fairbanks Indep. Sch. Dist.*, 830 S.W.2d 88, 90 (Tex.1992); *Texas State Bd. of Examiners in Optometry v. Carp*, 162 Tex. 1, 343 S.W.2d 242, 246 (1961)). Because such dismissal does not implicate the claims' merits, the trial court must dismiss the claims without prejudice. *Id.* (*citing Ritchey v. Vasquez*, 986 S.W.2d 611, 612 (Tex.1999); *Crofts v. Court of Civil Appeals*, 362 S.W.2d 101, 104 (Tex.1962)).

6.56 An aggrieved party is excused from exhausting its administrative

remedies if certain exceptions apply, including when: (i) an administrative agency purports to act outside its statutory powers; (ii) where the administrative agency cannot grant the requested relief; (iii) the issue presented is purely a question of law; (iv) certain constitutional issues are involved; and (v) the administrative remedies are inadequate and the exhaustion of administrative remedies would cause irreparable injury. *MAG-T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 625 (Tex. App.-Austin 2005, pet. denied); *Strayhorn v. Lexington Ins. Co.*, 128 S.W.3d 772, 780 (Tex. App.-Austin 2004), *aff'd,* 209 S.W.3d 83 (Tex. 2006).

6.57 Although, the PUC's Plea to the Jurisdiction generally claimed that it has primary or exclusive jurisdiction, the arguments raised therein only address exclusive jurisdiction. *See* CR 34-35; *cf. id.* at n. 10 ("Alternatively, the Commission has primary jurisdiction over the issues raised by Plaintiff, and the Court should abate the case pending the finality of the Commission's order."). Particularly, the PUC claims it has exclusive jurisdiction over CCN applications and suggests that this Court must await the filing of a suit for judicial review of the PUC's decision regarding such an application before it may exercise jurisdiction over this lawsuit. *See id.* The Chisholm Defendants make a similar argument. CR 22-23.

6.58 As explained above, Appellant asserts that the PUC lacks authority

and jurisdiction to exercise its economic regulatory authority regarding CCNs to: (a) take action that would render a special utility district ("SUD") created under legislative authority to provide water utility service within its own boundaries legally incapable of carrying out its statutory purpose; (b) take action that would nullify a SUD's landowners' and consumers' statutory right to vote for a Board of Directors with the authority to manage the district and govern its provision of water utility service; (c) take action that would affect the dissolution of an SUD; or (d) process or approve an CCN application that would effectively perform the three aforementioned actions. *See e.g.*, CR 511-512. Accordingly, Appellant's pleadings challenge the PUC's interpretation, construction and application of the statutes that regulate CCNs and includes claims that the Commissioners acted *ultra vires* in processing a CCN application and adopting a final order to revoke the CCN of an SUD (i.e., CTSUD) and amend the CCN of a municipal utility (i.e., Georgetown) to include all of the SUD's territory. Moreover, Appellant's pleadings seek injunctive relief as to the PUC because it cannot statutorily grant the relief requested by the Chisholm Defendants. CR 513-515. Appellant's lawsuit does not simply question the propriety of the PUC's decision to grant an otherwise valid CCN application pursuant. Further, the Legislature did not grant the PUC exclusive authority to resolve disputes concerning the construction of laws

governing CCNs or SUDs. Consequently, the PUC does not have exclusive jurisdiction over Appellant's claims concerning the interpretation and construction of the applicable statutes. Alternatively, assuming *arguendo* that the PUC has exclusive jurisdiction, Appellant is excused from exhausting its administrative remedies because the PUC is acting outside its statutory powers, the PUC cannot grant the requested relief, and this lawsuit presents issues that are pure questions of law. Appellants are entitled to a judicial construction of the statutes. Therefore, the PUC's Plea to the Jurisdiction should be denied.

6.59 Regardless of whether the exclusive or primary jurisdiction doctrines might apply, neither would support the dismissal or abatement of Appellant's claims. The administrative proceeding to which the PUC's plea to the Jurisdiction refers is now completed. As the PUC's plea to the jurisdiction noted, a final order was issued on January 13, 2016. CR 33. Protestants to the Application filed a timely motion for rehearing on February 5, 2016. CR 525, 545. On February 10, 2016, the PUC notified the parties that none of the Commissioners voted to add the motion for rehearing to an open meeting agenda, which would be required for the Commissioners to issue an order granting or denying said motion. *See* 16 Tex. Admin. Code § 22.264(c). Accordingly, Protestants exhausted all administrative remedies that may be applicable or available. CR 525. On March 8, 2016, the

Protestants' aforementioned motion for rehearing was overruled by operation of law, and thus became final and appealable. *See* Tex. Gov't Code §§ 2001.045, 2001.146(c), 2001.171; *see also* CR525. That same day, Protestants petitioned a Travis County District Court for judicial review of the PUC's final order. *See* CR522. Protestants, who include members of the Appellant herein, petitioned in intervention of this lawsuit. CR 523-525. Accordingly, Appellees' arguments in favor of dismissal or abatement (under either the exclusive or primary jurisdiction doctrines) are incorrect and inapposite. Consequently, the Appellee's Plea to the Jurisdiction should be denied. Therefore, the trial court's Order dismissing Appellant's claims should be reversed and these claims should be remanded for a hearing on the merits.

## H.    Appellant has Standing.

6.60    The Chisholm Defendants also incorrectly claim that Appellant lacks standing to assert claims against them. Appellant's First Amended Petition establishes that the Chisholm Trail SUD Stakeholders Group is a domestic nonprofit corporation, organized to advocate for and protect the interests of residents and landowners in the rural areas of Bell, Burnet and Williamson Counties in receiving adequate water utility service. *See* CR 477. Further, Appellant's Petition provides that the Appellant and its members, including

District customers and property owners, oppose and have protested CTSUD and the City's efforts to: (i) enter into the illegal Asset Transfer Agreement; (ii) illegally transfer CTSUD's CCN, assets, and water system to the City; and (iii) illegally dissolve the District. *See e.g., id.* at 486-488. As such, Appellant's Petition demonstrates that a real controversy exists between the Appellant (including its members) and the Appellees concerning the validity of the Asset Transfer Agreement and the illegality of the Appellees' actions.

6.61 When standing is not expressly conferred by statute, the general test for standing in Texas requires that there (a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought. *Sneed v. Webre*, 465 S.W.3d 169, 180 (Tex. 2015); *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex.2005). When considering the standing of a nonprofit corporation, the Texas Supreme Court has adopted the standard for associational standing, which provides that an association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 447 (Tex. 1993). The first prong of

associational standing may be satisfied if at least one of the organization's members would have standing individually. *See Save Our Springs Alliance, Inc. v. City of Dripping Springs,* 304 S.W.3d 871, 878 (Tex. App.—Austin 2010, pet. denied); *Hays County v. Hays County Water Planning P'ship,* 106 S.W.3d 349, 357 (Tex.App.-Austin 2003, no pet.).

6.62 As explained above, Appellant is a nonprofit corporation organized to advocate for and protect the interests of residents and landowners in the rural areas of Bell, Burnet and Williamson Counties in receiving adequate water utility service. Appellant's members include District customers and property owners who opposed the Agreement and have protested CTSUD and the City's efforts to enter into the illegal Asset Transfer Agreement, illegally transfer CTSUD's CCN, assets, and water system to the City, and illegally dissolve the District. Accordingly, Appellant has standing because: (a) at least one of its members would have standing to sue the Defendants; (b) the interests Appellant seeks to protect in this lawsuit are germane to the Chisholm Trail SUD Stakeholder Group's purpose; and (c) neither the claims asserted nor the relief requested in this lawsuit requires the participation of individual members in the lawsuit. Further, Appellant has standing under TOMA because it qualifies as an interested person under that Act. *See e.g., Thomas v. Beaumont Heritage Soc.,* 339 S.W.3d 893, 900 (Tex. – Beaumont 2011,

pet. denied). Therefore, Appellant has standing to assert the claims raised in its petition, and Appellees' Pleas to the Jurisdiction should have been denied.

6.63 The Chisholm Defendants, nevertheless, assert that Appellant lacks standing because it is not a party or third-party beneficiary to the Agreement. CR 62-63. In making this argument, the Chisholm Defendants rely upon case involving private litigants; not cases involving political subdivisions or public officers bound by constitutional and statutory limitations on their contracting authority and expenditure of public funds. *See e.g., id* (*citing Niagara Fire Ins. Co. v. Numismatic Co. of Fort Worth*, 380 S.W.2d 830 (Tex. Civ. App.-Fort Worth 1964, writ ref'd n.r.e) (holding that property insurer of corporation lacked standing to have sale of rare coins to the corporation by a corporate officer set aside on ground of self-dealing for unfairness)). Such cases are inapplicable to the instant lawsuit. Appellant is not seeking a benefit or to enforce a right under the Agreement. *Cf. City of Austin v. McCall*, 68 S.W. 791 (1902) (city taxpayer may enjoin the city from entering into a wrongful contract for purchase of water and electric light works). Accordingly, the trial court erred to the extent that it relied upon the Chisholm Defendants' "stranger to the Agreement" argument to grant Appellees' pleas to the jurisdiction. Therefore, the trial court's Order dismissing Appellant's claims should be reversed.

# VII.
## CONCLUSION

7.1 The Texas Constitution and common law recognize that Texas citizens have the standing and authority to obtain declaratory and injunctive relief when elected officials, political subdivisions, state agencies act in violation of the Texas Constitution and statutes. Appellant's lawsuit seeks to remedy the unconstitutional, unlawful and *ultra vires* acts of the Appellees. The doctrines of sovereign immunity, governmental immunity, primary jurisdiction, and exclusive jurisdiction do not shield the Appellees from Appellant's lawsuit for declaratory and injunctive relief. Judicial proceedings are the only potential remedy for unconstitutional, unlawful acts; otherwise, citizens will have no protection from abuses by government officials. Accordingly, Appellant affirmatively established that the trial court has subject matter jurisdiction over this lawsuit. Therefore, the trial court erroneously granted Appellees' pleas to the jurisdiction, and dismissed Appellant's claims with prejudice.

# VIII.
## PRAYER

8.1 For these reasons, Appellants request that this Court reverse the decision of the trial court granting the Appellees' pleas to the jurisdiction and remand this matter to the trial court for further proceedings.

Respectfully submitted,

/s/ James P. Allison
James P. Allison
SBN: 01090000
j.allison@allison-bass.com

J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com

Phillip Ledbetter
SBN: 24041316
p.ledbetter@allison-bass.com

**ALLISON, BASS & MAGEE, L.L.P.**
A.O. Watson House
402 W. 12th Street
Austin, Texas 78701
(512) 482-0701 *telephone*
(512) 480-0902 *facsimile*

## CERTIFICATION OF COMPLIANCE

I certify that the Appellants' Brief in the Court of Appeals for the Third District of Texas is a computer-generated document that contains 14,657 words, which is less than 15,000 words, and complies with the word limit for such a brief under Tex. R. App. P. 9.4.

/s/ James P. Allison
James P. Allison

## CERTIFICATE OF SERVICE

I certify that a copy of Appellants' Brief was served via certified mail, return receipt requested, facsimile, e-mail and/or electronically on this 2nd day of June, 2016, to the following:

Jose E. De La Fuente
SBN: 00793605
jdelafuente@lglawfirm.com
Lambeth Townsend
SBN: 20167500
ltownsend@lglawfirm.com
Ashley D. Thomas
SBN: 24090430
athomas@lglawfirm.com
Lloyd Gosselink, Rochelle & Townsend, P.C.
816 Congress Avenue, Suite 1900
Austin, Texas 78701
Telephone: (512) 322-5800
Facsimile: (512) 472-0532
*Lead Attorneys for Appellees the City of Georgetown, Chisholm Trail Special Utility District and the District Directors.*

Daniel C. Wiseman
SBN: 2402178
Daniel.wiseman@texasattorneygeneral.gov
Office of the Texas Attorney General
Environmental Protection Division (MC-066)
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 463-2012
Facsimile: (512) 320-0911
*Lead Attorney for Appellees the Public Utility Commission of Texas, Commissioner Donna L. Nelson, Commissioners Kenneth W. Anderson, Jr., and Commissioners Brandy Marty Marquez.*

Breck Harrison
SBN: 24007325
bharrison@jw.com
Leonard Dougal
SBN: 06031400
ldougal@jw.com
Jackson Walker, L.L.P.
100 Congress Avenue, Suite 1100
Austin, Texas 78701
Telephone: (512) 236-2000
Facsimile: (512) 236-2002
*Attorneys for Appellees Chisholm Trail Special Utility District and District Directors Delton Robinson, Ed Pastor, Mike Sweeney, James Pletcher, Robert Kostka, David Maserang, Gary Goodman, and Robert Johnson, Jr.*

Art Rodriguez
Russell & Rodriguez, L.L.P.
1633 Williams Drive, Building 2, Suite 200
Georgetown, Texas 78628-3659
(512) 930-1317

(866) 929-1641 (Fax)
arodriguez@txadminlaw.com
*Attorney for Appellee the City of Georgetown*

Kerry E. Russell
Russell & Rodriguez, L.L.P.
1633 Williams Drive, Building 2, Suite 200
Georgetown, Texas 78628
(512) 930-1317
(866) 929-1641 (Fax)
krussell@txadminlaw.com

Sam Chang
Staff Attorney
Public Utility Commission of Texas
Legal Division
1701 N. Congress Ave.
Austin, Texas 78711-3326
(512) 936-7261
(512) 936-7268 (fax)
sam.chang@puc.texas.gov
*Attorney for the Public Utility Commission of Texas Staff*

/s/ James P. Allison
James P. Allison

No. 03-16-00214-CV

IN THE
COURT OF APPEALS
FOR THE
THIRD DISTRICT OF TEXAS

CHISHOLM TRAIL SUD STAKEHOLDERS GROUP,

Appellant,

V.

CHISHOLM TRAIL SPECIAL UTILITY DISTRICT, AND DISTRICT DIRECTORS DELTON ROBINSON, ED PASTOR, MIKE SWEENEY, JAMES PLETCHER, ROBERT KOSTKA, DAVID MASERANG, GARY GOODMAN, AND ROBERT JOHNSON, JR.; THE PUBLIC UTILITY COMMISSION OF TEXAS; ET AL.,

Appellees.

From the 419th Judicial District Court of
Travis County, Texas

**APPENDIX TO APPELLANT'S BRIEF**

Appellant submits the following documents in support of its Brief.

**TABLE OF CONTENTS**

| Order On Defendants' Pleas to the Jurisdiction and Special Exceptions | Tab A |
|---|---|
| Plaintiff's First Amended Petition | Tab B |

# TAB A

| | | |
|---|---|---|
| CHISHOLM TRAIL STAKEHOLDERS GROUP, <br>     **Plaintiff,** | § <br> § <br> § <br> § | IN THE DISTRICT COURT |
| v. | § <br> § <br> § | |
| THE CHISHOLM TRAIL SPECIAL UTILITY DISTRICT, DELTON ROBINSON, C.E. ("ED") PASTOR, MIKE SWEENEY, JAMES PLETCHER, PAT GOWER, ROBERT KOSTKA, DAVID MASERANG, GARY GOODMAN, AND ROBERT JOHNSON, JR., IN THEIR OFFICIAL CAPACITIES AS DIRECTORS OF THE CHISHOLM TRAIL SPECIAL UTILITY DISTRICT, | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | **419TH JUDICIAL DISTRICT** |
| **and** | § <br> § | |
| THE CITY OF GEORGETOWN, TEXAS | § <br> § | |
| **and** | § <br> § | |
| THE PUBLIC UTILITY COMMISSION OF TEXAS, <br>     **Defendants.** | § <br> § <br> § | **TRAVIS COUNTY, TEXAS** |

Filed in The District Court
of Travis County, Texas

**MAR 11 2016**

At _____ 12:200 M.

Velva L. Price, District Clerk

## ORDER ON DEFENDANTS' PLEAS TO THE JURISDICTION AND SPECIAL EXCEPTIONS

On March 8, 2016, the Court considered the following: (1) Pleas to the Jurisdiction and Special Exceptions of Defendants Delton Robinson, C.E. "Ed" Pastor, Mike Sweeney, James Pletcher, Pat Gower, Robert Kostka, David Maserang, Gary Goodman, Robert Johnson, Jr. (together, all of the board members are the "Directors" and individually, a "Director"), the Chisholm Trail Special Utility District (the "District"), and the City of Georgetown (the "City") (collectively herein "Chisolm Defendants") against Plaintiff Chisolm Trail Stakeholders Group

as to the claims for relief asserted in its First Amended Petition; (2) Pleas to the Jurisdiction of Defendants Public Utility Commission of Texas, Donna A. Nelson, Kenneth W. Anderson, Jr., and Brandy Marty Marquez, in their Official Capacities as Public Utility Commissioners of Texas (collectively herein "PUC Defendants"); and (3) Defendant City of Georgetown's Special Exceptions to Plaintiff's Original Petition.

Plaintiff appeared through its attorney of record, James P. Allison, and announced ready. Chisolm Defendants appeared through their attorney of record, Jose E. De La Fuente, and announced ready. PUC Defendants appeared their attorney of record, Daniel Wiseman, and announced ready. The record of testimony was duly reported by Della Rothermel, the court reporter for the 250th Judicial District Court.

After considering Defendants' Pleas to the Jurisdiction, the Special Exceptions, Plaintiffs' Response, the parties' supplemental briefing, the pleadings on file, the arguments of counsel, and the applicable law, the Court rules as follows:

(1) IT IS ORDERED that Chisolm Defendants' Pleas to the Jurisdiction are GRANTED as to Claim for Relief (A) in Plaintiff's First Amended Petition. Accordingly, Plaintiff's request for a declaratory judgment that the Chisolm Defendants have acted illegally and ultra vires by acting to illegally dissolve CTSUD is hereby DISMISSED with prejudice to refiling.

(2) IT IS ORDERED that Chisolm Defendants' Pleas to the Jurisdiction are GRANTED as to Claim for Relief (B) in Plaintiff's First Amended Petition. Accordingly, Plaintiff's request for a declaratory judgment that Defendants have acted illegally and ultra vires by acting to illegally transfer CTSUD's assets to the City is hereby DISMISSED with prejudice to refiling.

(3)     IT IS ORDERED that Chisolm Defendants' Pleas to the Jurisdiction are GRANTED as to Claim for Relief (C) in Plaintiff's First Amended Petition. Accordingly, Plaintiff's request for a declaratory judgment that the Asset Transfer Agreement, including any amendments, between CTSUD and the City is illegal and void hereby is hereby DISMISSED with prejudice to refiling.

(4)     IT IS ORDERED that Chisolm Defendants' Pleas to the Jurisdiction are GRANTED as to Claim for Relief (D) in Plaintiff's First Amended Petition. Accordingly, Plaintiff's request for a declaratory judgment that Georgetown's Application seeks PUC approval to affect an illegal dissolution of the District and transfer of the District CCN and assets is hereby DISMISSED with prejudice to refiling.

(5)     IT IS ORDERED that PUC Defendants' Pleas to the Jurisdiction are GRANTED as to Claim for Relief (E) in Plaintiff's First Amended Petition. Accordingly, Plaintiff's request for a declaratory judgment that the PUC lacks jurisdiction over Georgetown's Application is hereby DISMISSED with prejudice to refiling.

(6)     IT IS ORDERED that PUC Defendants' Pleas to the Jurisdiction are GRANTED as to Claim for Relief (F) in Plaintiff's First Amended Petition. Accordingly, Plaintiff's request for a declaratory judgment that the Commissioners have acted illegally and ultra vires by processing and approving Georgetown's Application is hereby DISMISSED with prejudice to refiling.

(7)     IT IS ORDERED that the Pleas to the Jurisdiction of Chisolm Defendants and PUC Defendants are GRANTED as to Claim for Relief (G) in Plaintiff's First Amended Petition. Accordingly, Plaintiff's request for injunctive relief enjoining, staying, voiding, and reversing Defendants' illegal and ultra vires acts is hereby DISMISSED with prejudice to refiling.

ORDER ON PLEAS TO THE JURISDICTION AND SPECIAL EXCEPTIONS

(8)     IT IS ORDERED that Chisolm Defendants' Pleas to the Jurisdiction are GRANTED as to Claim for Relief (H) in Plaintiff's First Amended Petition. Accordingly, Plaintiff's request for injunctive relief enjoining, staying, voiding, reversing, and preventing any acts to implement the Asset Transfer Agreement, including any amendments is hereby DISMISSED with prejudice to refiling.

(9)     IT IS ORDERED that PUC Defendants' Pleas to the Jurisdiction are GRANTED as to Claim for Relief (I) in Plaintiff's First Amended Petition. Accordingly, Plaintiff's request for injunctive relief staying and enjoining all proceedings before the PUC and State Office of Administrative Hearings related to Georgetown's Application, including any amendments, pending further order of the Court is hereby DISMISSED with prejudice to refiling.

(10)     IT IS ORDERED that PUC Defendants' Pleas to the Jurisdiction are GRANTED as to Claim for Relief (J) in Plaintiff's First Amended Petition. Accordingly, Plaintiff's request for injunctive relief enjoining, staying, voiding, and reversing any proposal for decision or final order by the PUC and/or any presiding officer who has or will conduct any hearing (including any Administrative Law Judge with SOAH) related to Georgetown's Application, including any amendments is hereby DISMISSED with prejudice to refiling.

(11)     IT IS ORDERED that the Pleas to the Jurisdiction of Chisolm Defendants and PUC Defendants are GRANTED as to Claim for Relief (K) in Plaintiff's First Amended Petition. Accordingly, Plaintiff's request for injunctive relief enjoining the transfer of the District's CCN to Georgetown is hereby DISMISSED with prejudice to refiling.

(12)     IT IS ORDERED that Defendant City of Georgetown's Special Exceptions to Claims for Relief (L), (M), and (P) in Plaintiff's First Amended Petition is SUSTAINED. By no later than April 11, 2016, Plaintiff shall replead with sufficient factual allegations to support a

claim that Chisolm Defendants violated the Texas Open Meetings Act. If Plaintiff fails to replead appropriately, Claims for Relief (L), (M), and (P) in Plaintiff's First Amended Petition shall be dismissed.

(13) IT IS ORDERED that Chisolm Defendants' Pleas to the Jurisdiction are GRANTED as to Claim for Relief (N) in Plaintiff's First Amended Petition. Accordingly, Plaintiff's request for a permanent injunction enjoining, staying, voiding, and reversing CTSUD's actions related to the transfer of CTSUD's CCN to the City of Georgetown and the transfer of CTSUD's assets pursuant to the Asset Transfer Agreement and amendments is hereby DISMISSED with prejudice to refiling.

(14) IT IS ORDERED that Chisolm Defendants' Pleas to the Jurisdiction are GRANTED as to Claim for Relief (O) in Plaintiff's First Amended Petition. Accordingly, Plaintiff's request for a permanent injunction enjoining, staying, reversing, voiding, and preventing the effectiveness of the transfer of CTSUD's CCN to the City of Georgetown and the transfer of CTSUD's assets pursuant to the Asset Transfer Agreement and amendments is DISMISSED with prejudice to refiling.

SIGNED on the _11_ day of March, 2016.

_____
JUDGE PRESIDING
KARIN CRUMP

ORDER ON PLEAS TO THE JURISDICTION AND SPECIAL EXCEPTIONS

TAB B

| | | |
|---|---|---|
| CHISHOLM TRAIL SUD STAKEHOLDERS GROUP, Plaintiff, | § § § § § | IN THE DISTRICT COURT |
| v. | § § § | |
| THE CHISHOLM TRAIL SPECIAL UTILITY DISTRICT, DELTON ROBINSON, C.E. ("ED') PASTOR, MIKE SWEENEY, JAMES PLETCHER, PAT GOWER, ROBERT KOSTKA, DAVID MASERANG, GARY GOODMAN, AND ROBERT JOHNSON, JR., IN THEIR OFFICIAL CAPACITIES AS DIRECTORS OF THE CHISHOLM TRAIL SPECIAL UTILITY DISTRICT, | § § § § § § § § § § § § § | |
| and | § § | |
| THE CITY OF GEORGETOWN, TEXAS, | § § | 419TH DISTRICT OF |
| and | § § | |
| THE PUBLIC UTILITY COMMISSION OF TEXAS, | § § § | |
| and | § § | |
| DONNA L. NELSON, KENNETH W. ANDERSON, JR., AND BRANDY MARTY MARQUEZ, IN THEIR OFFICIAL CAPACITIES AS PUBLIC UTILITY COMMISSIONERS OF TEXAS, | § § § § § § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

3/8/2016 10:59:14 AM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-15-003337**
**Patsy Ybarra**

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

---

Plaintiff's First Amended Petition

NOW COMES Chisholm Trail SUD Stakeholders Group, Plaintiff herein, and would show unto the Court as follows:

## I.
## DISCOVERY CONTROL PLAN

1.      Discovery is intended to be conducted under a Level 2 a Discovery Control Plan, pursuant to Texas Rules of Civil Procedure 190.3.

## II.
## CLAIMS FOR RELIEF

2.1     Plaintiff seeks nonmonetary and monetary relief of $100,000 or less, including damages of any kind, penalties, court costs, expenses, prejudgment interest, and attorney fees. *See* TEX. R. CIV. P. 47.

## III.
## PARTIES

3.1     Plaintiff Chisholm Trail SUD Stakeholders Group ("Plaintiff") is a domestic nonprofit corporation. Plaintiff is organized to advocate for and protect the interests of residents and landowners in the rural areas of Bell, Burnet and Williamson Counties in receiving adequate water utility service. Its principal business address is 235 Sharp Cemetery Road, Killeen, Texas 76542-5146. Plaintiff has not been issued a driver's license number or a Social Security number. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 30.014(a).

3.2     Defendant Chisholm Trail Special Utility District ("CTSUD" or "District") is a special utility district created in 1990 by order of the Texas Natural Resources Conservation Commission (now, the Texas Commission on Environmental Quality ("TCEQ")), pursuant to Chapter 65 of the Texas Water Code. The District's geographic area covers approximately 257,116 acres and encompasses portions of Bell, Burnet, and Williamson Counties. The District does not include the City of Georgetown and vice versa. The District provides retail water utility

service to this area pursuant to a Certificate of Convenience & Necessity ("CCN") No. 11590 issued by the TCEQ, jurisdiction over this certificate has now been statutorily transferred to the Public Utility Commission ("PUC"). Citation has been issued and served upon Defendant Chisholm Trail Special Utility District as provided by law.

3.3     Defendants Delton Robinson, C.E. ("Ed") Pastor, Mike Sweeney, Robert Kotska, James Pletcher, David Maserang, Pat Gower, Gary Goodman, and Robert Johnson, Jr., are the individuals who are serving or have served as Directors of the Chisholm Trail Special Utility District, a political subdivision of the State of Texas, duly formed and existing under the laws of the State of Texas. These Defendants (collectively referred to as the District "Board Members" or "Directors") are being sued in their official capacities as the current and former board members for the Chisholm Trail Special Utility District.  Citations have been issued and served upon each Defendant Director as provided by law.

3.4     Defendant, the City of Georgetown ("Georgetown") is a home rule, municipal corporation located in Williamson County, Texas. Citation has been issued and served upon Defendant Georgetown as provided by law.

3.5     Defendant the Public Utility Commission of Texas ("PUC") is a political subdivision of the State of Texas.  The PUC's principal office is located in Austin, Texas. TEX. UTIL. CODE § 12.002. Citation has been issued and served upon the PUC as provided by law.

3.6     Defendants Donna L. Nelson, Kenneth W. Anderson, Jr., and Bandy Marty Marquez ("Commissioners") are the individuals appointed to serve as the three commissioners of the PUC, as prescribed by Tex. Util. Code § 12.051, and are being sued in their official capacities.

A.     Citation may be served on Defendant Donna L. Nelson at her usual place of business, the PUC Office, which is physically located in the William B.

Travis Bldg., 1701 N. Congress Avenue, 7th Floor, Austin, TX 78701. The mailing address for Defendant Donna L. Nelson's usual place of business is 1701 N. Congress Avenue, P. O. Box 13326, Austin, TX 78711-3326. Alternatively, Defendant Nelson may be served with citation wherever she may be found.

B.      Citation may be served on Defendant Kenneth W. Anderson, Jr., at his usual place of business, the PUC Office, which is physically located in the William B. Travis Bldg., 1701 N. Congress Avenue, 7th Floor, Austin, TX 78701. The mailing address for Defendant Kenneth W. Anderson, Jr.'s usual place of business is 1701 N. Congress Avenue, P. O. Box 13326, Austin, TX 78711-3326. Alternatively, Defendant Kenneth W. Anderson, Jr., may be served with citation wherever she may be found.

C.      Citation may be served on Defendant Bandy Marty Marquez at her usual place of business, the PUC Office, which is physically located in the William B. Travis Bldg., 1701 N. Congress Avenue, 7th Floor, Austin, TX 78701. The mailing address for Defendant Bandy Marty Marquez's usual place of business is 1701 N. Congress Avenue, P. O. Box 13326, Austin, TX 78711-3326. Alternatively, Defendant Bandy Marty Marquez may be served with citation wherever she may be found.

3.7     CTSUD, the District's Board Members, Georgetown, the PUC, and the Commissioners are all necessary parties. All persons who have any interest that would be affected by the declaration must be made parties. TEX. CIV. PRAC. & REM. CODE § 37.006(a). Further, all parties to an agreement are indispensable parties to any litigation that seeks to declare the agreement void and/or seeks injunctive relief that effectively sets aside the agreement. *Texas Logos, L.P. v. Brinkmeyer*, 254 S.W.3d 644, 658 (Tex. App.—Austin 2008, no pet.); *Texas River Barges v. City of San Antonio*, 21 S.W.3d 347, 357 (Tex.App.--San Antonio 2000, pet. denied) (party to a contract "is an indispensable party to any litigation that *seeks to declare the contract void* ") (emphasis added); *McCharen v. Bailey*, 87 S.W.2d 284, 285 (Tex.Civ.App.--Eastland 1935, no writ) ("Where the injunction in effect sets aside a contract all parties to the contract are necessary parties."). Further, under Texas law all parties against whom an injunction must run should be named in a suit for injunctive relief. *AVCO Corp. v. Interstate Sw., Ltd.*, 145 S.W.3d

257, 266 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Lone Starr Multi Theatres, Inc. v. State*, 922 S.W.2d 295, 297–98 (Tex.App.-Austin 1996, no writ). Plaintiff seeks declaratory and injunctive relief against all Defendants. Particularly, Plaintiff requests declaratory and injunctive relief setting aside an Asset Transfer Agreement between CTSUD and Georgetown. Additionally, Plaintiff requests declaratory and injunctive relief from CTSUD and its Board Members' illegal and ultra vires acts. Further, Plaintiff request declaratory and injunctive relief regarding CTSUD and Georgetown's efforts to affect an illegal dissolution and transfer of CTSUD's assets and CCN. Moreover, Plaintiffs request declaratory and injunctive relief regarding the PUC's lack of jurisdiction to affect an illegal dissolution and transfer of CTSUD's assets and CCN, as well as the Commissioners' related ultra vires acts.

## IV.
## JURISDICTION AND VENUE

4.1     The Honorable Court has jurisdiction over the controversy and the parties pursuant to Article III, § 52 and Article V, § 8, of the Texas Constitution; Texas Government Code § 24.007, and the Uniform Declaratory Judgments Act, TEX. CIV. & REM CODE § 37.004. The Court has jurisdiction to compel compliance with statutory or constitutional provisions, and to enjoin public officials from expending public funds under a contract that is void or illegal. *See Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 393 (Tex. 2011); *Osborne v. Keith*, 177 S.W.2d 198, 200 (Tex. 1944). The amount in controversy exceeds this Court's minimum jurisdictional requirements.

4.2     Governmental immunity is not implicated, or, in the alternative, is waived.

4.3     Venue is proper in Travis County, Texas pursuant to Sections 15.002, 15.012 and 15.005 of the Texas Civil Practice & Remedies Code. This lawsuit involves a written agreement between CTSUD and Georgetown to perform various obligations, including efforts to obtain

approval of the agreement from the TCEQ (now, PUC) and to prepare and seek the passage of legislation authorizing CTSUD's dissolution. CTSUD, the Directors, and Georgetown have been actively pursuing both efforts, all of which have been and are still occurring in Travis County. The efforts of CTSUD, the Directors, and Georgetown have also resulted in the closure of CTSUD's principal office in this state. Further, venue is proper in Travis County because the Defendant Commissioners and the PUC's principal office are located in Austin, Texas. Moreover, venue is mandatory in Travis County because this lawsuit seeks to stay proceedings before the PUC and State Office of Administrative Hearings, which are pending in Austin, Texas. The PUC does not contest that Travis County, Texas is the proper venue. All of Plaintiff's claims or actions arise out of the same transaction, occurrence, or series of transactions or occurrences. Therefore, Travis County is the proper venue.

## V.
### CONDITIONS PRECEDENT

5.1    All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## VI.
### FACTUAL BACKGROUND

6.1    The Chisholm Trail Special Utility District was created in 1990 by order of the Texas Natural Resources Conservation Commission (now, TCEQ), pursuant to Chapter 65 of the Texas Water Code. The District's geographic area is generally bounded on the east by Interstate Highway 35, to the south by the South San Gabriel River, to the west by the Burnet County/Williamson County, and to the North by the Lampasas River. The area is approximately 340 square miles and encompasses portions of Bell, Burnet, and Williamson counties. The District does not include the City of Georgetown and vice versa. The District provides retail

water utility service to this area pursuant to a Certificate of Convenience & Necessity ("CCN") No. 11590 issued by the TCEQ (now, statutorily transferred to the PUC). Currently, the District serves more than 7,000 water utility customers. The District is governed by a seven-member board of directors, elected at-large by the qualified voters in the District.

6.2.    The City of Georgetown (the "City" or "Georgetown") is a home rule city located in Williamson County. The City has a council-manager form of government. The City provides retail water utility services pursuant to a CCN issued by the TCEQ (i.e., CCN No. 12369). The Georgetown Utility System ("GUS") is a division of the City of Georgetown. GUS is responsible for the management and operations of the City's electric, water and wastewater systems. GUS has an advisory board that reviews policy, rates, and contracts and makes recommendations related to these issues to the City Council. Recommendations by the GUS advisory board are subject to ratification by the City Council. The GUS advisory board is selected by the City Council.

6.3    In 2007, the District entered into an agreement with the City of Georgetown to increase the capacity of a surface water treatment plant that would serve both the District and the City.    Under the Agreement, the District contributed several million dollars towards the expansion of the North Lake Georgetown Water Treatment Plant and obtained the right to an additional 5 million gallons per day of treated surface water. The expansion was due to be completed no later than the spring of 2011, but the Georgetown City Council delayed its completion. The additional treated water capacity the District had planned to get from the North Lake Georgetown plant was not available as scheduled due to the impacts of the 2011 drought. Thus, the District needed to rely upon its groundwater wells. One of those wells was found to have an obstruction that prevented lowering the intake valve to the proper level, resulting in

supply problems as the drought affected groundwater levels. All of this resulted in the District implementing water stage 4 water use restrictions on its customers' water use. These were primarily aimed at restricting landscape watering.

6.4     During the stage 4 water restrictions, all of the District's groundwater wells were brought back on line. The North Lake Georgetown Water Treatment Plant expansion project was completed by the City of Georgetown in the fall of 2011. By that time, the District had more treated water capacity than it had demand and was fully able to meet the needs of its customers.

6.5     After the Stage 4 watering restrictions were implemented, the District received complaints from customers in suburban areas near the City of Georgetown. This included complaints by Defendants Mike Sweeney and Delton Robinson, as representatives of ad hoc water committees for their respective neighborhoods. In 2012, those ad hoc water committees begun actively advocating for the District to pursue a transaction wherein the District would be dissolved and all of its water system and assets would be acquired by the City. Representatives from these ad hoc water committees sought to elect Delton Robinson and Mike Sweeney to the District's board in efforts to ensure that the District would be dissolved and acquired by the City. Defendants Delton Robinson and Mike Sweeney were elected in November 2012.

6.6     Under pressure from District customers who were unhappy with the District's water restrictions, the District entered into discussions with the City about possible options to regionalize water supply. The City, however, was interested only in acquiring all of the District's water, water system, and CCN. In April 2013, the District's Board rejected the City's proposal for an asset purchase agreement. The agreement would have provided the City with all the benefits of acquiring a viable water system and provided little or no public benefit in return. Notably, the agreement failed to increase regional water supply or capacity, failed to provide the

District customers with any commitments to provide better rates of service, and failed to provide customers or landowners with any effective electoral representation. It also included the City's acquisition of the District's assets without paying adequate compensation.

6.7 The District Board did not authorize any continued negotiations with the City after the April 18, 2013 meeting. Nevertheless, representatives of the City continued efforts to pursue the District's water and assets. The District directors most sympathetic to such a transaction then formed an ad hoc negotiating committee which took it upon itself to reopen negotiations with the City. During a meeting of the Board on July 18, 2013, Defendant Pat Gower suggested that the District have legal counsel prepare a contract providing for the transfer of all District assets and service territory to the City and for the District to be dissolved. Defendant Gower further suggested the draft contract be put to a final vote by the Board. The Board represented to the public that its legal counsel would be responsible for protecting the interests of the District's customers in connection with the preparation of the agreement.

6.8 During the next board meeting on August 1, 2013, the District's attorney, Mr. Tony Corbett, resigned his position. Defendant Pat Gower explained that Mr. Corbett felt the agreement he was instructed to prepare did not adequately protect the District's customers. During the same board meeting, Defendant Ed Pastor announced that he was resigning his position on the Board of Directors and that his resignation would be effective immediately. The Board then took a vote regarding whether to approve the asset transfer agreement. The board did not approve the agreement. At the end of the August 1 board meeting, Defendant Pat Gower indicated that he would table the board's consideration of the asset transfer agreement and set the matter for another vote on August 15, 2013. He also indicated that he would retain another

attorney, Mr. Leonard Dougal, to review the asset transfer agreement prior to the August 15th meeting.

6.9     The District held another board meeting on August 14, 2013. During the meeting, Mr. Dougal made a presentation to the board recommending that it amend the District's policies regarding indemnity and legal costs. Such amendments were intended to protect board members in the event they were sued related to their participation in the process of approving an asset transfer agreement with the City. The board adopted the recommended amendments. Additionally, Defendant Pat Gower made a motion to reseat Defendant Ed Pastor as a District Board member. The Board then approved Defendant Pastor being reseated.

6.10    The following day (August 15, 2013), the District held another board meeting, and voted to adopt District Resolution No. 2013-0815-01 authorizing the execution of an agreement transferring substantially all of the District's property and assets, including its water system assets, to the City. Marcus Canipe was the only Director who voted against the resolution. Resolution No. 2013-0815-01did not identify the particular terms of the asset transfer agreement and did not attach a copy the asset transfer agreement it purported to authorize.

6.11    In September 2013, the District and the City entered into a written Asset Transfer and Utility System Consolidation Agreement ("Agreement" or "Asset Transfer Agreement"). The effective date of the Agreement was October 15, 2013. The Agreement provided for the transfer of the District's entire water system to the City, including all of the District's facilities, property, cash, contracts, obligations, and all of the District's certificated water service area.

6.12    The Agreement placed a book value of $61,730,888.00 on the District's assets, and indicated that the District had approximately $15,611,627.00 in outstanding long-term debt. The Agreement did not place a value on the District's water rights, including the District's right

to more than 11,000 acre feet of raw water per annum from the Brazos River Authority. As such, the Agreement provides for the City's acquisition of well more than $46 million in value of net assets, without regard to the value of the District's water rights. The Agreement further provided that the parties agreed to use best efforts to seek passage of legislation that would authorize the immediate dissolution of the District. Accordingly, the Agreement provided no consideration to the District or public benefit. The District would simply transfer its assets and stop operating. The District would effectively be abolished and would no longer exist for any legal purpose.

6.13. The Agreement further provided that the closing of this transaction was conditioned upon the parties obtaining consent from various parties, including the "[a]pproval by the TCEQ for the transfer of the CTSUD CCN and the Assets." As such, in November 2013, the City filed an Application for Sale, Transfer, or Merger of a Retail Public Utility" ("STM Application" or "Application") with the TCEQ. The STM Application sought approval of the following proposed actions: (1) the sale of and acquisition of the water system under the District's CCN No. 11590; (2) transfer of the District's entire CCN to the City; (3) amendment of the City's CCN No. 12369; and (4) cancellation of the District's CCN. The Application and the accompanying notices that were delivered to District customers and other affected persons declaring the District's "INTENT TO SELL FACILITIES AND TRANSFER CERTIFICATE OF CONVENIENCE AND NECESSITY (CCN) NO. 11590 TO THE CITY OF GEORGETOWN."

6.14. Numerous persons protested the proposed transaction and requested a contested administrative hearing by the TCEQ, including the members of the Plaintiff nonprofit corporation, the Bell County Commissioners Court, Texas Senator Troy Fraser, and Texas

Representative Jimmie Don Aycock. These protestors explained that the interests of the water utility customers, businesses, and landowners within the District are best served by its continued operation as a freestanding district that is governed by a board of directors who are electorally and politically accountable to the voters within the District's boundaries. The proposed transfer of the CTSUD's assets and CCN to City of Georgetown would cede control of water utility service decisions for areas well beyond the Georgetown city limits to the Georgetown City Council. This would alienate and politically isolate the customers, businesses, and landowners in the rural area of the District, leaving them with no representation in their water matters because all customers in the unincorporated areas of Williamson County (outside the City of Georgetown), and the customers in Bell and Burnet Counties cannot vote for the Georgetown City Council. This action would be detrimental to the interests and property values of customers, businesses, and property owners in the portions of Bell, Burnet, and Williamson counties located outside Georgetown's city limits.

6.15 In May 2014, the matter was referred to the State Office of Administrative Hearings ("SOAH") for a contested case hearing. Following a preliminary hearing, the Administrative Law Judge determined that the TCEQ had jurisdiction over Georgetown's STM Application and admitted parties, including five Protestants ("Protestants"), three of whom are also Plaintiff's members.

6.16 On August 21, 2014, the District's Board adopted a resolution that purports to: (1) authorize the District's president to execute an Amended Asset Transfer Agreement with Georgetown; (2) authorize the District's president to execute an Operations Agreement between the District and Georgetown; (3) authorize the District's president to consummate the transactions contemplated by the Amended Asset Transfer Agreement and Operations

Agreement; and (4) approve the adoption of a Transition Surcharge of $4.75 per meter per for District customers "to fund CTSUD's operating costs and expenses associated with transitioning service to the City of Georgetown and with maintaining CTSUD's CCN." The Amended Asset Transfer Agreement and the Operations Agreements were not attached to or incorporated into the resolution.

6.17. On September 1, 2014, Georgetown's STM Application was statutorily transferred from the subject matter jurisdiction of the TCEQ to the PUC. The filings in that matter (SOAH DOCKET NO. 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 and PUC DOCKET NO. 42861) are publicly available online.[1]

6.18. On September 12, 2014, CTSUD and the City executed a First Amendment to Asset Transfer and Utility System Consolidation Agreement ("First Amendment" or "First Amended Agreement") which incorporated several documents related to the transaction, including a Service Area Operations and Management Agreement ("Operations Agreement"). Also included was a Flow of Funds Memorandum, which outlines the flow of funds in connection with First Amendment, including the efforts of the City to defease a portion of the District's bonded indebtedness.

The First Amendment contains several notable changes, including that:

(1) the District will no longer be obligated to transfer its CCN to the City at the closing of their asset transfer; and

(2) the parties agreed to waive the *requirement* that the TCEQ approve the asset transfer agreement as a condition of their closing.

---

[1] The filings in this docket may be accessed by visiting http://interchange.puc.texas.gov/WebApp/Interchange/application/dbapps/filings/pgSearch.asp and searching for control number 42861.

6.19    The aforementioned resolution provides that pursuant to the Operations Agreement, "the City will provide water utility services within the CTSUD CCN." Accordingly, the Operations Agreement generally provides that the City will be responsible for operating the District's water system and have all powers of District Management and staff. Under the Agreement, the parties claim that the District shall continue to exercise all of the powers and duties of the CCN holder for water utility service within the District's CCN. Nevertheless, under the First Amended Agreement, the District transferred all of its water system to the City and adopted the City's policies and rate structure (not including the Transition Surcharge). Further, the District agreed that the City will bill, collect, and retain water service revenues collected within the District's CCN, less a portion of the aforementioned Transition Surcharge.

6.20    Following the execution of the First Amendment, CTSUD illegally consummated the transaction, transferring its waters system and nearly all of its assets to the City. Since the closing of the asset transfer, the District effectively ceased to exist. The District no longer operates an office. Calls to the District's telephone number (254-793-3103) were greeted with a recording stating that caller had reached "Georgetown Utility Systems, formerly Chisholm Trial Special Utility District." The recorded messages also indicate that the District's phone number will be discontinued. Further, District customers now receive water utility bills from the "Georgetown Utility Systems Western District Office." The First Amendment and Operations Agreement also made the City responsible for seeking approval to transfer the District's CCN.

6.21    The Flow of Funds Memorandum produced by the District regarding the payment of its obligations pursuant to the Amended Asset Transfer Agreement indicates that the City contributed a total of $5,285,070.45 toward the defeasance of the District's debt. Further, the City has produced a Financial Report for fiscal year 2014, which provides that the City

experienced a 91.8% increase in revenue over the prior year, including $71.5 million in capital grants and contributions due primarily to the acquisition of CTSUD. Hence, under the First Amendment to the Asset Transfer Agreement, the City acquired the District's water system, which the City has valued at more than $70 million[2], as well as the District's water reserves and the revenues from its profitable retail water utility.

6.22    In September 2014, the Protestants in the contested case hearing filed a motion seeking the dismissal of Georgetown's STM Application. The Motion provided, *inter alia*, that Georgetown's STM Application seeks to illegally revoke the District's CCN, dissolve the District, and transfer the District's assets to Georgetown. Further, the motion provided that the PUC lacks jurisdiction to approve Georgetown's STM Application and affect an illegal dissolution of the District, as well as an illegal acquisition of the District's water system and CCN. The PUC Staff responded by asserting that the PUC does not have jurisdiction to evaluate whether the STM Application or Asset Transfer Agreement violates the statutory requirements related to dissolution of special utility districts.[3] The Administrative Law Judge agreed and ordered that the proceeding continue solely regarding the issues regarding the proposed transfer of the District's CCN to Georgetown. The Public Utility Commissioners refused to hear an appeal of that decision, and later issued a Preliminary Order identifying the issues that must be addressed by the ALJ. Notably, the Preliminary Order indicated that the proceeding would not address the dissolution of the District or the approval of the Asset Transfer Agreement.[4]

---

[2] Plaintiff maintains that this valuation fails to account for additional assets and receivables, including water rights, and is considerably below market value.

[3] *See* Staff's Response to Protestants' Motion for Summary Disposition (Item No. 131) at pg. 3 (available online here:
http://interchange.puc.texas.gov/WebApp/Interchange/application/dbapps/filings/pgSearch_Results.asp?TXT_CNT R_NO=42861&TXT_ITEM_NO=131).

[4] *See* the PUC's Preliminary Order (Item No. 180) at pgs. 3-11 (available online here:
http://interchange.puc.texas.gov/WebApp/Interchange/application/dbapps/filings/pgSearch_Results.asp?TXT_CNT R_NO=42861&TXT_ITEM_NO=182).

6.23    On January 15, 2015, Georgetown and the District entered into a Second Amendment to the Asset Transfer and Utility System Consolidation Agreement ("Second Amended Agreement" or "Second Amendment"). The Second Amendment served primarily to provide that Georgetown and the District intended for the Asset Transfer Agreement to constitute a contract made under Texas Water Code Section 13.248. The PUC later determined that this statute does not apply to Georgetown's Application.[5] Nevertheless, the PUC also indicated that Georgetown's Applications may be processed under other provisions of the Water Code without any further amendment of the Application or further notice being published regarding the same.[6]

6.24    On April 4, 2015, House Bill 4172 was introduced in the Texas House of Representatives relating to the dissolution of CTSUD. This bill was introduced in accordance with terms of the Asset Transfer Agreement providing that CTSUD and Georgetown will pursue efforts to seek passage of legislation that would authorize the immediate dissolution of the District. The bill proposed legislation that would have authorized the District board to adopt an order that would dissolve the District and affect a transfer of its assets to Georgetown. House Bill 4712 would have attempted to further preclude any judicial review of the Board's order dissolving the District. On April 22, 2015, Defendant CTSUD Directors Delton Robinson and Michael Sweeney as well as other CTSUD and City representatives testified at a public hearing before the Texas House of Representatives' Special Committee on Special Purposes Districts in favor of House Bill 4172. Conversely, several witnesses testified in opposition to House Bill 4172 and submitted letters to members of congress opposing the bill.    House Bill 4172 did not pass during the legislative session.[7] Therefore, the CTSUD has not been legally dissolved.

---

[5] *See* PUC Preliminary Order (Item No. 182) at pg. 7.

[6] *See id.* at pgs. 5-6.

[7] The legislative history for House Bill 4172 is publicly available on the Texas Legislature's website here: http://www.legis.state.tx.us/BillLookup/History.aspx?LegSess=84R&Bill=HB4172.

## VII.
## CAUSES OF ACTION & AUTHORITIES

*Illegal Dissolution and/or Consolidation*

7.1     As described above, the Asset Transfer Agreement provides that the City and District agree to use best efforts to seek passage of legislation that would authorize the immediate dissolution of the District. This is necessary because the City and District lack the requisite statutory authority to dissolve or consolidate the District.

7.2     A political subdivision authorized to be created pursuant to legislative authority may be dissolved only pursuant to legislative authority. *See Ringling v. City of Hempstead*, 193 F. 596, 599 (5th Cir. 1911); *Harness v. State*, 13 S.W. 535, 537 (Tex. 1890); *Largen v. State ex rel. Abney*, 13 S.W. 161, 163 (Tex. 1890); *Watts v. Double Oak Indep. Sch. Dist.*, 377 S.W.2d 779, 780 (Tex. Civ. App.—Fort Worth 1964, no writ); Tex. Att'y Gen. No. GA-0663 (2008). As the Texas Supreme Court has described, "'[t]he state creates such [municipal] corporations for public ends, and they will and must continue until the legislature annuls or destroys them, or authorizes it to be done.'" Tex. Att'y Gen. Op. No. GA-0663 (2008) (*citing Largen*, 13 S.W. at 162; *see also Ringling*, 193 F. at 599 ("It is well settled that a municipal corporation can only be dissolved by legislative action."); *Harness*, 13 S.W. at 537 (stating that "[m]unicipal corporations can be created only in the manner provided by law, and when created must continue until abolished in some legal method"). This principle applies to political subdivisions other than cities. *See Watts*, 377 S.W.2d at 780; Tex. Att'y Gen. Op. No. GA-0663.

7.3     The District is a special utility district created pursuant to Chapter 65 of the Texas Water Code. In sections 65.727 through 65.731 of the Water Code, the Texas Legislature has provided the sole method by which the directors of such a district are authorized to dissolve it. Section 65.727 specifically provides that a district's board may dissolve a special utility district,

"if the board considers it advisable *before* the issuance of any bonds, notes, or other indebtedness." TEX. WATER CODE § 65.727(a) (emphasis added). To effect such a dissolution, a majority of the board must find "before the issuance of bonds, notes, or other obligations or the final lending of its credit in another form that the proposed undertaking for any reason is impracticable or apparently cannot be successfully and beneficially accomplished" and must hold a public hearing on a proposal to dissolve the district. *Id.* §§ 65.727(b), 65.728, 65.729. "If the board *unanimously* determines from the evidence that the best interests of the persons and property in the district will be served by dissolving the district, the board shall enter the appropriate findings and order in its records dissolving the district. Otherwise the board shall enter its order providing that the district has not been dissolved." *Id.* § 65.730 (emphasis added). A board's decree to dissolve a special utility district is subject to appeal. *Id.* § 65.731.

7.4     The District has been operating as a viable retail water utility for more than twenty years. The Asset Transfer Agreement acknowledged that the District had more than $60 million in assets and approximately $15 million in outstanding debt obligations. Only six members of the District's Board approved the Agreement. The District's Board has not conducted a public hearing on a proposal to dissolve the District. As such, it is clear that the District cannot dissolve pursuant to section 65.727. Nevertheless, the terms of the District's Asset Transfer Agreement and the First Amendment expressly incorporate terms providing for and causing CTSUD's dissolution. Therefore, the Asset Transfer Agreement and First Amendment affect an illegal dissolution.

7.5     Chapter 65 also includes provisions authorizing the consolidation of two special utility districts. *See* TEX. WATER CODE §§ 65.723 – 65.726. This process requires the electoral approval of both district's qualified voters. *Id.* § 65.724. The City is not a special utility district,

and the District has not conducted an election authorizing its consolidation with the City. As such, it is clear that the District cannot dissolve pursuant to Chapter 65 of the Water Code.

7.6.    Chapter 49 of the Water Code contains additional provisions generally applicable to special utility districts. This Chapter provides the TCEQ with the authority to dissolve a district that is inactive for a period of five consecutive years and has no outstanding bonded indebtedness. *Id.* § 49.321. This process requires the TCEQ to conduct its own investigation regarding the propriety of dissolution, conduct a public hearing, and adopt an order providing for dissolution. *Id.* §§ 49.322. Such an order may be appealed to a district court for de novo review. *Id.* § 49.326.

7.7.    The Asset Transfer Agreement acknowledges that in September 2013, the District was active and had outstanding bonded indebtedness. As such, it is clear that the District cannot dissolve pursuant to Chapter 49 of the Water Code. Nevertheless, the terms of the District's Asset Transfer Agreement and the First Amendment expressly incorporate terms providing for and causing CTSUD's dissolution. Therefore, the Asset Transfer Agreement and First Amendment affect an illegal dissolution.

7.8    A contract to fulfill an obligation which cannot be performed without violating the law contravenes public policy and is void. *Lewis v. Davis*, 199 S.W.2d 146, 149 (Tex. 1947). Therefore, the Asset Transfer Agreement and the amendments thereto are void.

*Illegal Grant of Public Funds*

7.9.    The Texas Constitution places limits on the power of a local government to transfer funds to any other entity. Article III, section 52 of the Texas Constitution provides that the legislature may not authorize any county, city, or other political corporation of the state "to lend its credit or to grant public money or thing of value in aid of, or to any individual,

association or corporation whatsoever." TEX. CONST. art. III, § 52; *see also id.* art. XI, § 3 (similar provision). These provisions bar donations of funds from one governmental entity to another, as well as donations from governmental entities to private entities. *See Harris Cnty. Flood Control Dist. v. Mann*, 140 S.W.2d 1098 (Tex. 1940); *San Antonio Indep. Sch. Dist. v. Board of Trs. of San Antonio Elec. & Gas Sys.*, 204 S.W.2d 22 (Tex. Civ. App.—El Paso 1947, writ ref'd n.r.e.); Tex. Att'y Gen. Op. No. JC-0335 (2001).

7.10    When a political subdivision transfers funds, it must be for a public purpose with a clear public benefit received in return. *See Mann*, 140 S.W.2d at 258–59. To insure that the political subdivision receives its consideration, *viz.*, accomplishment of the public purpose, the political subdivision must retain some degree of control over the performance of the contract. *Key v. Comm'rs. Court of Marion Cnty.*, 727 S.W.2d 667, 669 (Tex. App.—Texarkana 1987, no writ). Hence, a political subdivision cannot grant funds to a municipal corporation, but it may contract with it to provide services or accomplish a purpose that the political subdivision is authorized to provide. *See* Tex. Att'y Gen. Op. No. JC-0335 (2001).

7.11    Water districts are political subdivisions. *See* TEX. CONST. art. XVI, § 59; *Willacy Cnty. Water Control & Improvement Dist. No. 1 v. Abendroth*, 177 S.W.2d 936 (Tex. 1944). As such, the Texas Constitution prevents a special utility district from making a gift or grant of public funds or property to another public or private entity.

7.12    As discussed above, the Asset Transfer Agreement indicates that the District has more than $60 million in assets, and provides that the City with a net acquisition of assets valued at more than $46 million. In September 2014, CTSUD illegally consummated the asset transfer pursuant to the First Amended Asset Transfer Agreement. The City has produced a Financial Report for fiscal year 2014 which reports that Georgetown experienced a 91.8% increase in

revenue over the prior year, including $71.5 million in capital grants and contributions due primarily to the acquisition of CTSUD. Hence, under the First Amendment to the Asset Transfer Agreement, the City acquired the District's water system, which the City has valued at more than $70 million, as well as the District's water reserves and the revenues from its profitable retail water utility.

7.13 The First Amended Asset Transfer Agreement affected a transfer of the District's entire water system to the City without consideration. This transaction clearly is a financial benefit to the City, but does not provide any clear public benefit to the District, the District's customers, or landowners within the District. Rather, it transferred the District's water utility system to Georgetown and imposed an improper surcharge of $4.75 per meter per month for District customers to fund Georgetown's operation of the water system under CTSUD's CCN. Further, the Asset Agreement provides for the District's dissolution and negates any method to insure that any public purpose could be accomplished. Therefore, it provides an illegal grant of public funds.

7.14 A contract to fulfill an obligation which cannot be performed without violating the law contravenes public policy and is void. *Lewis v. Davis*, 199 S.W.2d at 149. Therefore, the Asset Transfer Agreement and the amendments thereto are void.

*Ultra Vires Acts of District Board Members*

7.15 A government official commits an ultra vires act when he or she acts without lawful authority. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). An official acts without lawful authority when he violates state law, acts beyond the limits of his authority, or misinterprets a law he is charged with administering. *See id.*; *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432 (Tex.1994) (suit challenging state officials' construction of compulsory school-

attendance law); *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997) ("A private litigant does not need legislative permission to sue the State for a state official's violations of state law."); *Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945) (suit to declare government officials were wrongfully compelling plaintiffs to pay certain taxes). Sovereign immunity does not bar a suit against government officials whose acts are ultra vires. *Heinrich*, 284 S.W.3d at 372.

7.16    CTSUD is a special utility district created pursuant to Chapter 65 of the Texas Water Code and is considered a conservation and reclamation district under Article XVI, Section 59, of the Texas Constitution. TEX. CONST. art. XVI, § 59; TEX. WATER CODE § 65.011. Such a district may be created "to purchase, own, hold, lease, and otherwise acquire sources of water supply; to build, operate, and maintain facilities for the transportation of water; and to sell water to towns, cities, and other political subdivisions of this state, to private business entities, and to individuals." TEX. WATER CODE § 65.012(1). A district has the functions, powers, authority, and rights that will permit accomplishment of the purposes for which it is created. *Id.* § 65.201. Their assets and authorities may not be transferred of sold for purposes other than to carry out their lawful rights and duties. *See id.* § 49.213; TEX. GOV'T CODE § 791.011(c).

7.17.    Special utility districts are governed by a board of elected directors. TEX. WATER CODE §§ 65.101, 65.103. In sections 65.727 through 65.731 of the Water Code, the Texas Legislature has provided the sole method by which the directors of such a district are authorized to dissolve the district. *See id.* §§ 65.727–.731. Section 65.727 specifically provides that a district's board may dissolve a special utility district, "if the board considers it advisable *before* the issuance of any bonds, notes, or other indebtedness." *Id.* § 65.727(a) (emphasis added). This

District, however, is not eligible to dissolve pursuant to section 65.727 because it has issued indebtedness.

7.18    A special utility district generally may not furnish, make available, render, or extend retail water or sewer utility service to any area to which retail water utility service is being lawfully furnished by another retail public utility without first having obtained a CCN that includes the area in which the consuming facility is located. *See id.* §§ 13.242(a), .252, .254. Further, municipally owned or operated utilities are generally prohibited from providing retail water utility service within the area certificated to another retail public utility without first having obtained from the utility commission a CCN that includes the areas to be served. *Id.* § 13.247(a). In order to obtain a CCN for a particular area, a retail public utility generally must file an application requesting the PUC to either grant or amend its CCN. *Id.* §§ 13.241–.244. The District holds a CCN for covering nearly all of the land within its territory. As such, the City may not lawfully provide water utility service to any area within CTSUD's CCN. Conversely, if CTSUD transfers its CCN to the City, CTSUD will not be able to lawfully provide water utility service to any areas within its own territory. As such, CTSUD's agreement to seek approval to transfer its CCN to the City will render it incapable of providing water utility service to its own areas and customers and thus will negate its ability to carry out the purpose for which it was created under Texas law.

7.19    The terms of the Asset Transfer Agreement (including amendments) provide for the transfer of the CTSUD's water system, water rights, and virtually all of its assets to the City. The Agreement further provides for the transfer of CTSUD's CCN to the City. Accordingly, the Agreement expressly provides for a transaction that will make it impossible for CTSUD to accomplish of the purposes for which it is created. Pursuant to the First Amended Agreement,

the CTSUD and the City affected dissolution of the District and an illegal grant of the District's assets to the City. Moreover, the Amended Transfer Agreement expressly provides that CTSUD and the City will seek *ex post facto* legislative ratification for the dissolution, which they are now actively pursuing. These are all acts which are outside of the legal authority of the District's directors. Therefore, when the CTSUD Directors approved the original Asset Transfer Agreement and the amendments thereto, the directors committed ultra vires acts outside their authority.

*PUC Approval Sought to Affect an Illegal Asset and CCN Transfer*

7.20    Georgetown and CTSUD are retail public utilities. *See* TEX. WATER CODE § 13.002(19). Each holds a CCN to provide retail water utility service to their respective service areas. A retail public utility generally may not furnish, make available, render, or extend retail water utility service to any area to which retail water utility service is being lawfully furnished by another retail public utility without first having obtained a CCN that includes the area in which the consuming facility is located. *Id.* § 13.242(a); see also id. §§ 13.252, 13.254. In other words, a CCN provides a retail public utility with the exclusive right (i.e., a monopoly) to provide retail water service within its certificated territory. In order to obtain a CCN for a particular area (including an area served by another CCN holder), a retail public utility generally must file an application requesting the PUC to either grant or amend its CCN. *Id.* §§ 31.241 – 13.244.

7.21    The Asset Transfer Agreement provides for the transfer of the District's entire CCN to Georgetown. An agreement to transfer all of the customers and the entire CCN of one of the retail public utility to another necessarily seeks to decertify one retail public utility while amending the CCN of the other. Accordingly, the PUC issued a Preliminary Order providing

that Georgetown's Application must meet the standards set out it the Texas Water Code Section 13.254 and associated PUC rules for the revocation of the a CCN, as well as Texas Water Code Sections 13.241 and13.246 and associated rules to amend a CCN to incorporate new service areas.

7.22    There are no provisions in Chapter 13 of the Water Code authorizing the wholesale transfer of a political subdivision's or municipality's CCN. The sole provision in Chapter 13 addressing the transfer of an entire CCN applies only to a "utility" or a "water supply or sewer service corporation," both of which are defined to exclude municipal corporations and political subdivisions (e.g., special utility districts). *See id.* §§ 13.002(23), 13.301. This is understandable because special utility districts like the Chisholm Trail Special Utility District are created by statute to operate and maintain water utility services for the public benefit. *See* TEX. CONST. art. XVI, § 59; TEX. WATER CODE § 65.012. Special utility districts' assets and rights may not be transferred or sold for purposes other than to carry out those districts' lawful rights and duties. *See* TEX. WATER CODE § 49.213; TEX. GOV'T CODE § 791.011(c). An agreement to transfer the entire service area, all of the customers, and the entire CCN of a special utility district to another retail public utility would be antithetical to the purpose for which such a district is created. Therefore, Georgetown's Application seeks PUC approval to affect an illegal transfer of the District's CCN.

7.23.    Section 13.254 of the Water Code governs the process whereby the PUC may revoke the CCN of a water utility. *See id.* § 13.254. It specifically applies to situations where a certificate holder has agreed in writing to allow another retail public utility to provide service within its service area without amending its certificate. *Id.* § 13.254(a)(3). Such a revocation requires that the PUC provide notice, conduct a hearing, and enter an order pursuant to section

13.254. A retail public utility may not *in any way* render retail water service directly or indirectly to the public in an area that has been decertified under this section without providing compensation for any property that the PUC determines is rendered useless or valueless to the decertified retail public utility as a result of the decertification. *Id.* § 13.254(d). The amount of compensation shall be determined by a qualified individual or firm serving as a certified appraiser. *Id.* § 13.254(f). The compensation must be just and adequate taking numerous factors into consideration, including but not limited to: the value of the service facilities of the retail public utility located within the area in question; the amount of any expenditures for planning, design, or construction of service facilities that are allocable to service to the area in question; the amount of the retail public utility's contractual obligations allocable to the area in question; any demonstrated impairment of service or increase of cost to consumers of the retail public utility remaining after the decertification; the impact on future revenues lost from existing customers; and necessary and reasonable legal expenses and professional fees. *Id.* § 13.254(g).

7.24. In support of its Application, Georgetown has asserted that decertifying the District's CCN would not render any of the District's property useless or valueless because Georgetown acquired the District's assets prior to the PUC ordering a decertification. As discussed above, Georgetown did not compensate the District for any of its assets; it simply acquired them. Georgetown and the District did not consult an independent appraiser or use any of the factors identified in Section 13.254 to value the District's assets. Rather, Georgetown acquired the District's assets prior to decertification, in order to circumvent the statutory process for ensuring that the District and its customers receive adequate compensation for its assets. Therefore, Georgetown's Application seeks PUC approval to affect an illegal revocation of the District's CCN.

7.25     As discussed above, a retail public utility must amend its CCN to incorporate another utility's water service area before it may provide retail water service to another utility's customers. Sections 13.241 and 13.246 of the Texas Water Code provide the standards for CCN amendments. In determining whether to grant or amend a CCN, the PUC shall ensure that the applicant possesses the financial, managerial, and technical capability to provide continuous and adequate service. TEX. WATER CODE § 13.241(a). In making this determination, the PUC must consider numerous public interest factors including whether an applicant has the financial ability of the applicant to pay for the facilities necessary to provide continuous and adequate service and the financial stability of the applicant. *Id.* § 13.246(c). Georgetown's Application plainly provides that it intends to utilize the District's water system and assets to obtain the financial and technical capability to provide water service to the District's customers and service area. Georgetown's Application necessarily assumes the legality of the Asset Transfer Agreement. Meanwhile, the PUC indicated that Georgetown's Application would be addressed without considering the dissolution of the District or the asset transfer between the District and Georgetown. Nevertheless, granting Georgetown's Application will necessarily will render the District financially and legally incapable of providing retail water utility service to its own service territory. According, Georgetown's Application will result in an illegal dissolution of the District. Therefore, Georgetown's Application seeks PUC approval to affect an illegal revocation of the District's CCN.

7.26     The PUC lacks jurisdiction over applications and proceedings that are not permitted by law, including proceedings referred to the State Office of Administrative Hearings. There is no statutory authority for a transfer of the District's water system and CCN. Accordingly, Georgetown's Application and Asset Transfer Agreement seek PUC approval to

affect an illegal dissolution of the District and transfer of the District's CCN and assets. Therefore, the PUC lacks jurisdiction over Georgetown's Application.

7.27    Following the initiation of Plaintiff's lawsuit, the PUC asserted that it possessed jurisdiction to process and approve Georgetown's Application notwithstanding that it affect an illegal dissolution of the District and transfer of the District's CCN and assets. Accordingly, the administrative proceeding continued over the Protestants' objection that the Application was being improperly considered notwithstanding the pendency of this lawsuit challenging the illegality of the Asset Transfer Agreement and the PUC's lack jurisdiction over the Application. Ultimately, the PUC issued an order approving the Application, based in large part upon the erroneous assumption that the Asset Transfer Agreement was not unlawful and that the PUC had jurisdiction to affect an illegal dissolution of CTSUD and transfer of its assets and CCN to Georgetown. The PUC issued is final order on January 13, 2016. The Protestants filed a timely motion for rehearing. None of the Commissioners voted to add the motion for rehearing to an open meeting agenda, which would be required for the Commissioners to grant said motion. See 16 Tex. Admin. Code § 22.264(c) ("An affirmative vote by one commissioner is required for consideration of the motion at an open meeting"). Accordingly, the Protestants' motion for rehearing will be overruled by operation of law, and the PUC's order will be appealable on March 8, 2016. *See* Tex. Gov't Code §§ 2001.045, 2001.146(c) ("[a] state agency shall act on a motion for rehearing not later than the 55th day after the date the decision or order that is the subject of the motion is signed or the motion for rehearing is overruled by operation of law."), 2001.171. Consequently, Protestants properly exhausted all administrative remedies.

7.28    The PUC asserts that is properly exercised jurisdiction over Georgetown's Application pursuant provisions of the Texas Water Code governing the manner in which water

utility CCN may be granted, revoked or amended. *See e.g.*, The PUC Plea to the Jurisdiction at pg. 4 (*citing* Tex. Water Code §§ 13.241, 13.254). This claim is erroneous for numerous reasons.

7.29    Chapter 13 of the Water Code regulates water rates and services. *See id* §§ 13.001 – 13.523. Subchapter G deals specifically with certificates of convenience and necessity. *See id.* §§ 13.241 – 13.257. The 83rd Texas Legislature adopted acts transferring the economic regulation of water and sewer service from the Texas Commission on Environmental Quality ("TCEQ") to the PUC. *See* Act of May 13, 2013, 83rd Leg., R.S., ch. 170 (HB 1700), § 2.96; 2013 Tex. Gen. Laws 725, 730; Act of May 13, 2013, 83rd Leg., R.S. ch. 171 (SB 567), § 96, 2013 Tex. Gen. Laws 772. According, effective September 1, 2014, Chapter 13 was amended transferred jurisdiction over CCN applications from the TCEQ to the PUC. Consequently, in order to obtain a CCN for a particular area, a retail public utility generally must file an application requesting the PUC to either grant or amend its CCN. *Id.* §§ 31.241 – 13.244. Likewise, an application must be filed to revoke a retail public utility's CCN (i.e., monopolistic right) to provide water utility service to any portion of its service territory. *See e.g., id.* § 13.254.

7.30    The PUC was only granted authority to exercise economic regulation over water utility services. Chapter13 of the Water Code does not govern the creation, operation, or governance of special utility districts. Chapter 13 of the Water Code does not provide the PUC with authority to dissolve special utility districts or consolidate them with municipal utilities. As discussed above, Chapters 49 and 65 of the Water Code contain the statutory provisions that prescribe when and how special utility districts may consolidate or be dissolved. Notably, Chapter 49 provides the TCEQ, not the PUC, with the authority to dissolve a district that is inactive for a period of five consecutive years and has no outstanding bonded indebtedness. *Id.* §

49.321. This process requires the TCEQ to conduct its own investigation regarding the propriety of dissolution, conduct a public hearing, and adopt an order providing for dissolution. *Id.* §§ 49.322. Such an order may be appealed to a district court for de novo review. *Id.* § 49.326. It is undisputed that CTSUD is not eligible for dissolution under Chapters 49 or 65 of the Water Code. Nevertheless, it is also undisputed that a PUC order revoking the District's CCN and amending Georgetown's CCN to include the District's service area would render the District legally incapable of provides its own constituents with water utility service. That is a purpose for which the District was created and conferred statutory authority. *See e.g.,* Tex. Water Code §§ 49.211, 65.012. Accordingly, a PUC order revoking the District's CCN and amending Georgetown's CCN to include the District's service area would affect an illegal dissolution of the District. However, the PUC lacks jurisdiction under Chapter 13 of the Texas Water Code to affect such a dissolution. Moreover, such action by the PUC would violate the provision in Chapter 49 and 65 of the Water Code. Therefore, the PUC lacked the requisite statutory authority to process or approve Georgetown's Application under Chapter 13 of the Water Code.

7.31 The PUC further lacks jurisdiction under Chapter 13 to take action that will nullify statutory voting rights. The laws of this State provide landowners, consumers and qualified voters of special utility districts with the statutory right to vote for the management of their districts. *See id.* §§ 65.022, 65.101 – 65.103. As explained above, amending Georgetown's CCN to include CTSUD's certificated service area has the vital effect of giving Georgetown the exclusive right to provide retail water utility service to CTSUD customers and landowners. *See id.* §§ 13.002(19), 13.242, 13.252, 13.254. Accordingly, granting such a CCN amendment would give Georgetown a monopoly in the area CTSUD was created to serve. *See id.* § 13.001(b) (finding that retail public utilities are by definition monopolies in the areas they serve).

Consequently, the Texas Water Code clearly establishes that if such a CCN amendment is approved, the District's consumers and landowners will lose the ability to vote for the governing body of the political subdivision created to serve them. *See id.* Therefore, a PUC order revoking the District's CCN and amending Georgetown's CCN to include the District's service area would nullify the District landowners' and consumers' statutory right to vote on water utility issues. There are no statutes providing the PUC with the jurisdiction or authority, however, to take action that will affect statutory voting rights. Therefore, the PUC lacked the requisite statutory authority to process or approve Georgetown's Application under Chapter 13 of the Water Code.

*Public Utility Commissioners have acted Ultra Vires.*

7.32    A government official commits an ultra vires act when he or she acts without lawful authority. *Heinrich*, 284 S.W.3d at 372. An official acts without lawful authority when he violates state law, acts beyond the limits of his authority, or misinterprets a law he is charged with administering. *See id.*; *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432 (Tex.1994) (suit challenging state officials' construction of compulsory school-attendance law); *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d at 405 ("A private litigant does not need legislative permission to sue the State for a state official's violations of state law."); *Cobb v. Harrington*, 190 S.W.2d at 712 (suit to declare government officials were wrongfully compelling plaintiffs to pay certain taxes). Sovereign immunity does not bar a suit against government officials whose acts are ultra vires. *Heinrich*, 284 S.W.3d at 372.

7.33    CTSUD is a special utility district created pursuant to Chapter 65 of the Texas Water Code and is considered a conservation and reclamation district under Article XVI, Section 59, of the Texas Constitution. TEX. CONST. art. XVI, § 59; TEX. WATER CODE § 65.011. The

District was created for the purpose of and conferred with the requisite statutory authority to provide its constituents with water utility service. *See id.* §§ 49.211, 65.012. Accordingly, the laws of this State provide CTSUD's landowners, consumers and qualified voters with the statutory right to vote for the management of the Districts. *See id.* §§ 65.022, 65.101 – 65.103. Nevertheless, the Commissioners directed that Georgetown's Application be processed an application to revoke the District's CCN and amend Georgetown's CCN to include the District's service area would, notwithstanding the knowledge that their approval of such an application would: (i) render the District legally incapable of providing water utility service to its constituents; (ii) affect an illegal nullification of the District landowners' and consumers' statutory right to vote on water utility issues; and (iii) affect an illegal dissolution of the District. Moreover, on January 13, 2016 the Commissioners signed an order revoking CTSUD's CCN amending Georgetown's CCN to include the District's revoked service area. Therefore, the Commissioners, in their official capacities, have committed ultra vires acts outside their authority.

*Violations of the Texas Open Meetings Act*
*by CTSUD and the District Board Members*

7.34 CTSUD and the District Board Members have violated the Texas Open Meetings Act in multiple ways. The Texas Open Meetings Act requires that "every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by" the Act. TEX. GOV'T CODE §551.002. However, CTSUD and the District Board Members' actions related to the transfer of CTSUD's CCN and the transfer of CTSUD's assets pursuant to the Asset Transfer Agreement and amendments were clouded by confusion and secrecy. Throughout the transfer of CTSUD's CCN and the transfer of CTSUD's assets, CTSUD failed to adequately apprise the public of its intended action, participated in walking quorums and

improperly and illegally convened into closed session ("executive session") to discuss the contract to transfer CTSUD's CCN and transfer of CTSUD's assets without invoking the proper and applicable exceptions to the Texas Open Meetings Act ("TOMA") and/or without statutory authority to have such discussions in executive session. Any actions taken in open session on the transfer of CTSUD's CCN and the transfer of CTSUD's assets were merely a rubber stamp of decisions made in improper executive sessions and/or outside of any public meeting.

7.35 The District Board Members attempted to avoid compliance with TOMA by deliberating about public business without a quorum being physically present in one place at one time but discussing the same public business between all members. The District Board Members conducted serial meetings among various members related to the transfer of CTSUD's CCN and the transfer of CTSUD's assets and had communications as a group and/or partial group to discuss various aspects of the transfer of CTSUD's CCN and the transfer of CTSUD's assets in an attempt to avoid the requirements of open session.

7.36. In addition to walking quorums, CTSUD on a number of occasions violated TOMA, including but not limited to:

a. The District Board Members discussed the transfer of CTSUD's CCN and the transfer of CTSUD's assets, negotiated the terms of the transfer of CTSUD's CCN and the transfer of CTSUD's assets, and agreed upon the terms of the transfer of CTSUD's CCN and the transfer of CTSUD's assets in secret meetings and in one or more executive session;

b. CTSUD failed to properly notice meetings concerning the transfer of CTSUD's CCN and the transfer of CTSUD's assets by improperly noticing discussions as executive session that were impermissible; and

c.    Discussions, decisions, and actions regarding the transfer of CTSUD's CCN and the transfer of CTSUD's assets were improperly held in executive session.

7.37    Because of the significant violations of the Texas Open Meetings Act, Chisholm Trail Stakeholders Group requests this Court to enter a declaratory judgment reversing and voiding all actions taken by CTSUD and its District Board Members concerning the transfer of CTSUD's CCN and the transfer of CTSUD's assets.

## VIII.
## Claim for Declaratory Relief

8.1    The Asset Transfer Agreement (including amendments) provides for the illegal transfer of the District's entire retail water utility system to the City and the CCN under which it maintains the right to serve as the authorized entity providing retail water utility services within its territory. The Agreement necessarily precludes the District from accomplishing the purposes for which it was created and provides for its illegal dissolution. Accordingly, the District's Directors have engaged in ultra vires acts in violation of the Texas Constitution, the Texas Water Code and other statutes by approving: (1) an agreement to illegally grant CTSUD's water system and other public assets to the City; (2) an agreement to illegally dissolve CTSUD; (3) an agreement to transfer illegally CTSUD's CCN to the City; and (4) expending public funds to obtain the illegal dissolution of the District and the illegal transfer its assets to the City. Further, Georgetown's Application seeks PUC approval to affect an illegal dissolution of the District and transfer of the District's CCN and assets.

8.2    The PUC lacks jurisdiction under Chapter 13 of the Water Code to consolidate the District with Georgetown, or to dissolve the District. Further, PUC lacks jurisdiction under Chapter 13 of the Water Code to nullify the District landowners' and consumers' statutory right

to vote on water utility issues. Nevertheless, the Commissioners directed that Georgetown's Application be processed an application to revoke the District's CCN and amend Georgetown's CCN to include the District's service area would, notwithstanding the knowledge that their approval of such an application would: (i) render the District legally incapable of providing water utility service to its constituents; (ii) nullify the District landowners' and consumers' statutory right to vote on water utility issues; and (iii) affect a dissolution of the District. Moreover, on January 13, 2016 the Commissioners signed a final order revoking CTSUD's CCN amending Georgetown's CCN to include the District's revoked service area.

8.3     This Court has jurisdiction to issue declaratory relief to compel compliance to with statutory and constitutional provisions, and to enjoin public officials from expending public funds under a contract that is void or illegal. *See* TEX. CIV. & REM CODE § 37.004; *Sawyer Trust*, 354 S.W.3d at 393; *Osborne v. Keith*, 177 S.W.2d at 200.   Further, the Court has jurisdiction to issue declaratory relief when a governmental entity lacks jurisdiction under a challenged statute to take actions that will result affect an illegal dissolution of a political subdivision and/or illegally nullify its constituents' statutory voting rights.   See Tex. Civ. Prac. & Rem. Code § 37.006; *Heinrich*, 284 S.W.3d at 373 n. 6; *Leeper*, 893 S.W.2d at 446.   Moreover, a justiciable controversy regarding whether a state agency or officer has acted beyond statutory authority provides a jurisdictional basis for a Uniform Declaratory Judgment Act action seeking construction of that statutory authority.  *Leeper*, 893 S.W.2d at 446; *Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 114 (Tex. App.—Austin 2007, no pet.).  Such suits do not implicate sovereign immunity.  *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405; *Texas Logos, L.P.*, 241 S.W.3d at 114.

8.4. The Plaintiff represents the interests of landowners within the District's certificated service area and the interests of District customers. As such, Plaintiff is an interested party affected by the Agreement and under the provisions of the Texas Constitution and Texas Water Code, among other Texas law's regulating special utility districts, and is entitled to bring this action. Further, Plaintiff is an interested party affected by the PUC and its Commissioners because they have acted without authority to approve and affect the Agreement. The Plaintiff's members include District customers and property owners who oppose the Agreement and have protested CTSUD and the City's efforts to enter into the illegal Asset Transfer Agreement, illegally transfer CTSUD's CCN, assets, and water system to the City, and illegally dissolve the District. This included efforts to protest Georgetown's Application and exhaust all administrative remedies. Plaintiff was organized to advocate for and protect the interests of residents and landowners in the rural areas of Bell, Burnet and Williamson Counties in receiving adequate water utility service. As such, a controversy exists concerning the validity of the Agreement and the actions and legal authority of Defendants. Accordingly, Plaintiff respectfully requests that the Court: (1) determine the validity of the Agreement (including amendments) and Texas laws relied upon by Defendants to affect the Agreement; (2) determine the ultra vires character of the Defendants' acts; (3) issue declaratory relief to compel Defendants' compliance with statutory and constitutional provisions; (4) issue declaratory relief to remedy Defendants' expenditures of public funds under a contract that is void or illegal; and (5) issue declaratory relief to remedy Defendants' illegal dissolution of the District and the illegal nullification of statutory voting rights.

8.5 Plaintiff respectfully requests that the Court make the following declarations:

a. The District issued debt and/or loaned its credit, and therefore cannot dissolve pursuant to Texas Water Code section 65.727;

b. The District cannot consolidate with the City of Georgetown pursuant to Texas Water Code sections 65.723 – 65.726;

c. The District incurred bonded indebtedness and has not been inactive for five consecutive years, and therefore cannot dissolve pursuant to Texas Water Code section 49.321;

d. The District is not otherwise authorized by Texas law to dissolve;

e. The District, the District Directors, the City, the PUC and the Commissioners have engaged in an unlawful dissolution of the District;

f. The City's Application, seeking PUC approval to transfer CTSUD's CCN to Georgetown, will render CTSUD incapable of providing water utility service within its own boundaries, in violation of state law.

g. The District has transferred its public assets to the City in violation of article III, section 52 of the Texas Constitution;

h. CTSUD transferred its water system to the City and cannot provide water utility service within the District's boundaries in violation of state law;

i. The Asset Transfer Agreement and its amendments, violate Texas law, contravene public policy, and are void;

j. Georgetown's Application seeks PUC approval to affect an illegal dissolution of the District and transfer of the District's CCN and assets;

k. The PUC lacks jurisdiction over Georgetown's Application;

l. Chapter 13 of the Texas Water Code does not provide the PUC with authority or jurisdiction to affect a dissolution of the District;

m. Chapter 13 of the Texas Water Code does not provide the PUC with authority or jurisdiction to render the District incapable of providing water utility service within its own boundaries;

n. Chapter 13 of the Texas Water Code does not provide the PUC with authority or jurisdiction to nullify the District landowners' and consumers' statutory right to vote on water utility issues;

o. The Commissioners committed ultra vires acts outside of their legal authority in approving the Application filed by Georgetown to effectuate the Asset Transfer Agreement;

p.  The District and the Defendant Directors of the District have violated the Texas Open Meetings Act; and

q.  The Defendant Directors of the District committed ultra vires acts outside of their legal authority in approving and effectuating the Asset Transfer Agreement.

## IX.
### CLAIM FOR INJUNCTIVE RELIEF

9.1.    The Asset Transfer Agreement (including amendments) provides for the illegal transfer of the District's entire retail water utility system to the City. The Agreement necessarily precludes the District from accomplishing the purposes for which it was created, and provides for its illegal dissolution. Accordingly, the District's directors have engaged in ultra vires acts approving: (1) an agreement to illegally grant of CTSUD's water system and other public assets to Georgetown; (2) an agreement to illegally dissolve CTSUD; (3) an agreement to transfer CTSUD's CCN to Georgetown; and (4) other acts seeking the illegal dissolution of the District and the illegal transfer its assets to Georgetown. Further, Georgetown's Application seeks PUC approval to affect an illegal dissolution of the District and transfer of the District's CCN and assets. Moreover, PUC lacks the authority and jurisdiction over an application that will render the District legally incapable of providing its constituents with water utility service, nullify those constituents' statutory voting rights, and affect the District's dissolution. Furthermore, the Commissioners have engaged in ultra vires acts while processing and approving Georgetown's Application.

9.2    This Court has jurisdiction to issue injunctive relief to compel compliance with statutory and constitutional provisions and to enjoin public officials from expending public funds under a contract that is void or illegal. *See* TEX. CIV. & REM CODE §§ 37.004, 37.011; *Sawyer Trust*, 354 S.W.3d at 393; *Osborne v. Keith*, 177 S.W.2d at 200. Defendants continue to engage

in these illegal and ultra vires acts. These violations will continue if the Court does not enjoin the Defendants. Accordingly, Plaintiff respectfully requests that this Court issue injunctive relief, both temporary and permanent: (1) enjoining the transfer of the District's assets and water system to the City; (2) enjoining Defendants from taking any further acts under the Agreement (including amendments); (3) enjoining the City from collecting any revenue from the customers of the District, including the illegal surcharge; (4) enjoining the PUC, the Commissioners, or any administrative law judge from making any decision or final order regarding Georgetown's Application; (5) staying or enjoining all proceedings before the PUC and State Office of Administrative Hearings related to Georgetown's Application, pending further order of the Court; (6) voiding and/or enjoining the illegal and ultra vires acts of the PUC and its Commissioners; (7) enjoining the transfer of the District's CCN to the City; (8) enjoining Defendants from taking further acts without lawful authority, as set forth above; (9) preventing the dissolution, transfer or waste of the District's assets and water system; (10) issue injunctive relief necessary to remedy the PUC's illegal acts and the Commissioners' ultra vires acts; and (11) issue any injunctive relief necessary to remedy Defendants' illegal expenditures of public funds under an contract that is void or illegal.

## X.
### PERMANENT INJUNCTION FOR VIOLATIONS OF THE TEXAS OPEN MEETINGS ACT

10.1    Upon final trial on the merits, the Chisholm Trail SUD Stakeholders Group seeks a permanent injunction voiding and reversing any transfer of CTSUD's CCN to the City of Georgetown and the transfer of CTSUD's assets pursuant to the Asset Transfer Agreement and its amendments. CTSUD and its elected officials violated the Act prior to the illegal and void attempted transfer of CTSUD's CCN and the illegal and void transfer of CTSUD's assets. There is a likelihood of continued violations if this Court does not enjoin the CTSUD and its Board

Members. As such, the Chisholm Trail Stakeholders Group requests that the Court enjoin CTSUD and its Board Members from continuing to violate the Texas Open Meetings Act, as set forth above.

## XI.
### CLAIM FOR ATTORNEYS' FEES AND COSTS

11.1    Plaintiff is entitled to recover costs and reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code section 37.009 because this is a suit for declaratory relief.

## XII.
### JURY DEMAND

12.1    Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## XIII.
### PRAYER

13.1.    WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that on notice and hearing, the Court grant Plaintiff the relief to which it is entitled, as described in more detail above, including but not limited to:

(A)    A declaratory judgment that Defendants have acted illegally and ultra vires by acting to illegally dissolve CTSUD;

(B)    A declaratory judgment that Defendants have acted illegally and ultra vires by acting to illegally transfer CTSUD's assets to the City;

(C)    A declaratory judgment that the Asset Transfer Agreement, including any amendments, between CTSUD and the City is illegal and void;

(D)    A declaratory judgment that Georgetown's Application seeks PUC approval to affect an illegal dissolution of the District and transfer of the District's CCN and assets;

(E)     A declaratory judgment that the PUC lacks jurisdiction over Georgetown's Application;

(F)     A declaratory judgment that the Commissioners have acted illegally and ultra vires by processing and approving Georgetown's Application;

(G)     Injunctive relief enjoining, staying, voiding, and reversing Defendants' illegal and ultra vires acts as requested above;

(H)     Injunctive relief enjoining, staying, voiding, reversing, and preventing any acts to implement the Asset Transfer Agreement, including any amendments;

(I)     Injunctive relief staying and enjoining all proceedings before the PUC and State Office of Administrative Hearings related to Georgetown's Application, including any amendments, pending further order of the Court;

(J)     Injunctive relief enjoining, staying, voiding, and reversing any proposal for decision or final order by the PUC and/or any presiding officer who has or will conduct any hearing (including any Administrative Law Judge with SOAH) related to Georgetown's Application, including any amendments;

(K)     Injunctive relief enjoining the transfer of the District's CCN to Georgetown;

(L)     A declaratory judgment that CTSUD and the District's Board members violated the Texas Open Meetings Act;

(M)     A declaratory judgment that the transfer of CTSUD's CCN to the City of Georgetown and the transfer of CTSUD's assets pursuant to the Asset Transfer Agreement and amendments are unauthorized, void, and of no legal effect because of violations of the Texas Open Meetings Act;

(N)     A permanent injunction enjoining, staying, voiding, and reversing CTSUD's actions related to the transfer of CTSUD's CCN to the City of Georgetown and the transfer of CTSUD's assets pursuant to the Asset Transfer Agreement and amendments;

(O)     A permanent injunction enjoining, staying, reversing, voiding, and preventing the effectiveness of the transfer of CTSUD's CCN to the City of Georgetown and the transfer of CTSUD's assets pursuant to the Asset Transfer Agreement and amendments;

(P)     A permanent injunction enjoining and preventing CTSUD and the District's Board members from continuing to violate the Open Meetings Act;

(Q)     An award of reasonable and necessary attorneys' fees;

(R)     Costs of court; and

(S)     Such other relief to which Plaintiff may be entitled at law or in equity.

Respectfully submitted,

_James P. Allison_
SBN: 01090000
j.allison@allison-bass.com

J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com

Phillip L. Ledbetter
SBN: 24041316
p.ledbetter@allison-bass.com

**ALLISON, BASS & MAGEE, L.L.P.**
A.O. Watson House
402 W. 12th Street
Austin, Texas 78701
(512) 482-0701 telephone
(512) 480-0902 facsimile

## VERIFICATION

STATE OF TEXAS    §
           §
COUNTY OF TRAVIS  §

Before me, the undersigned Notary Public, on this day personally appeared John Fisher, who being first duly sworn on oath deposes and says that he has read the foregoing Plaintiff's First Amended Petition, that he has personal knowledge of the facts stated therein, and that they are true and correct.

John Fisher

SUBSCRIBED AND SWORN TO before me the undersigned Notary Public, on this _8th_ day of March, 2016.

Notary Public, In and For the State of Texas

**JENNIFER STOKES**
**My Commission Expires**
**June 5, 2019**

My Commission Expires:

June 5, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of March, 2016, I served the foregoing document via facsimile, electronically, and/or certified mail, return receipt requested to the following:

Jose E. De La Fuente
SBN: 00793605
jdelafuente@lglawfirm.com
Lambeth Townsend
SBN: 20167500
ltownsend@lglawfirm.com
Ashley D. Thomas
SBN: 24090430
athomas@lglawfirm.com
Lloyd Gosselink, Rochelle & Townsend, P.C.
816 Congress Avenue, Suite 1900
Austin, Texas 78701
Telephone: (512) 322-5800
Facsimile: (512) 472-0532

*Attorneys for Defendants the City of Georgetown, Chisholm Trail Special Utility District and the District Directors.*

Breck Harrison
SBN: 24007325
bharrison@jw.com
Leonard Dougal
SBN: 06031400
ldougal@jw.com
Jackson Walker, L.L.P.
100 Congress Avenue, Suite 1100
Austin, Texas 78701
Telephone: (512) 236-2000
Facsimile: (512) 236-2002

*Attorneys for Defendants Chisholm Trail Special Utility District and District Directors Delton Robinson, Ed Pastor, Mike Sweeney, James Pletcher, Robert Kostka, David Maserang, Gary Goodman, and Robert Johson, Jr.*

Daniel C. Wiseman
SBN: 24042178
Daniel.wiseman@texasattorneygeneral.gov
Office of the Texas Attorney General
Environmental Protection Division (MC-066)
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 463-2012
Facsimile: (512) 320-0911

*Attorneys for the Public Utility Commission of Texas*

Phillip L. Ledbetter

---